**DAYTON INDEPENDENT SCHOOL DISTRICT, et al., Plaintiffs,**

v.

**U.S. MINERAL PRODUCTS COMPANY, W.R. Grace & Company and United States Gypsum Company, Defendants.**

Civ. A. No. B–87–507–CA.

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 12, 1992.

Martin W. Dies, Orange, Tex., for plaintiffs.

Martin W. Dies, Orange, Tex., and Richard C. Hile, Tonahill, Hile, Liester & Jacobellis, Beaumont, Tex., for intervenors.

Walter J. Crawford, Cheryl D. Olesen, Wells, Peyton, Beard, Greenberg Hunt and Crawford, Beaumont, Tex., and Maureen M. Blanding, Patricia S. Greek, Andrews & Kurth, Houston, Tex., for W.R. Grace & Co.

Edward H. Green, Weller, Wheelus & Green, Beaumont, Tex., Stephen S. Andrews, Woodard, Hall & Primm, Houston, Tex., and John H. Lewis, Jr., Amelia C. Benton, Morgan, Lewis & Bockius, Philadelphia, Pa., for U.S. Gypsum Co.

Harold H. Walker, Gardere & Wynne, Dallas, Tex., A.W. Davis, Jr., Newton, Tex., and Michael T. Starczewski, Hoyle, Morris & Kerr, Philadelphia, Pa., for Nat. Gypsum Co.

John Scott Carlson, Sam A. Lindsay, City Attorney's Office, Dallas, Tex., Ronald Ray

Scott, Susan B. Robertson, Bracewell & Patterson, Houston, Tex., Jim L. Flegle, Bracewell & Patterson, Dallas, Tex., and Mary Caroline Parker, Dies, Dies & Henderson, Orange, Tex., for City of Dallas, City of Fort Worth, Dallas–Fort Worth Intern. Airport.

Stephen M. Loftin, Taylor M. Hicks, Andrews & Kurth, Houston, Tex., for W.R. Grace & Co–Conn.

Mary Caroline Parker, Martin White Dies, Dies, Dies & Henderson, Orange, Tex., Susan Robertson, Bracewell & Patterson, Houston, Tex., Ronald Ray Scott, Bracewell & Patterson, Houston, Tex., Scott Lyford, Galveston, Tex., and Richard C. Hile, Tonahill, Hile, Leister & Jacobellis, Jasper, Tex., for County of Galveston.

Kent M. Adams, Adams & Duesler, Beaumont, Tex., for Federal Ins. Co.

David A. Livingston, Livingston & Markle, Houston, Tex., William H. Yoes, Beaumont, Tex., for U.S. Minerals Products Co.

Moria E. O'Connell, McElroy, Deutsch & Mulvaney, Morristown, N.J., for U.S. Fire Ins. Co.

Andrew R. Harvin, Doyle, Reed, Restrepo, Harvin & Robbins, Houston, Tex., for Continental Cas. Co.

Marc A. Sheiness, Hirsch, Glover, Robinson & Sheiness, Houston, Tex., for Centennial Ins. Co. and Transamerican Ins. Co.

Timothy M. Noland, Gleason, McGuire & Shreffler, Chicago, Ill., and Walter Weathers, Jr., Houston, Tex., for Employers Mut. Cas. Co. and Allstate Ins. Co.

Hubert Oxford, III, Benckenstein, Oxford & Johnson, Beaumont, Tex., and R. Jeff Carlisle, David R. Isola, Lynberg & Watkins, Los Angeles, Cal., for AIU Ins. Co., American Home Assur. Co., Granite State Ins. Co., Nat. Union Fire Ins. Co. of Pa., New Hampshire Co., and Ins. Co. of the State of Pa.

Don Martinson, Cecily Shull Ticker, Dallas, Tex., and Peter N. Hillman, Susan J. Leskowitz, Chadbourne & Parke, New York City, for Republic Ins. Co.

Thomas B. Taylor, Taylor & Eggleston, Houston, Tex., and Carl J. Pernicone, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for Boston Old Colony Ins. Co. and Royal Ins. Co.

Gail C. Jenkins, Benckenstein, Norvell Bernsen & Nathan, Beaumont, Tex., and Katherine E. Rawosky, Margaret B. Jones, Grippo & Elden, Chicago, Ill., for Fireman's Fund Ins. Co.

Derek R. Van Gilder, Van Gilder & Associates, Houston, Tex., and M. Carolyn Cox, Teresa D. Baer and Peter A. Von Mehren, Wilmer, Cutler & Pickering, Washington, D.C., for Ins. Co. of North America, Century Indem. Co. and Pacific Employers Ins. Co.

William J. Joseph, Jr., Young & Hampton, Houston, Tex., and Arthur Leiderman, Standard, Weisberg, Heckerling & Rosow, New York City, for Admiral Ins. Co., Adriatic Ins. Co., Royale Belge, SA, and Swiss Reinsurance Co.

L.S. Carsey, Fulbright & Jaworksi, Houston, Tex., and Mary Ann D'Amato, Thomas J. Quinn, Eileen T. McCabe, Mendes & Mount, New York City, for Eagle Star Ins. Co., Guarantee Ins. Co., Assurances Generales Belge, Birmingham Fire Ins. Co., Plaisted & London Companies, and Zurich Intern. Ltd.

## OPINION

JOE J. FISHER, District Judge.

ON THIS DAY came on for consideration Defendants, W.R. Grace & Co.–Conn.'s and United States Gypsum Company's, Motions for Summary Judgment concerning the application of the Statute of Repose, Tex.Civ.Prac. & Rem.Code, Sections 16.008 and 16.009. The Court, having considered the extensive briefing by both Plaintiffs and Defendants, finds that the Defendants are not afforded protection by either Section.

Grace argues that it is entitled to the protection of Tex.Civ.Prac. & Rem.Code, Sections 16.008 and 16.009. United States Gypsum relies on Section 16.009 alone. Plaintiffs deny that Defendants are entitled to such immunity under either statute, arguing that the legislature did not intend to afford manufacturers of these type of

products this immunity, and furthermore that material issues of fact exists which preclude entry of summary judgment.

The question presented to this Court is whether Sections 16.008 and 16.009 protects all manufacturers of products installed within a building. In this diversity action, the Court must look to Texas law governing the substantive issues in this case. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). No Texas court has yet addressed this specific issue, and therefore this Court must determine whether the Texas Supreme Court would afford manufacturers of building products such protection.

The Texas Supreme Court set out the general rule for construction of a statute in *City of Mason v. West Texas Utilities Co.,* 150 Tex. 18, 237 S.W.2d 273 (1951). There, the Supreme Court stated:

> The fundamental rule controlling the construction of a statute is to ascertain the intention of the legislature expressed therein. That intention should be ascertained from the entire Act, and not from isolated portions thereof. This court has repeatedly held that the intention of the legislature in enacting a law is the law itself; and hence the aim and object of construction is to ascertain and enforce the legislative intent, and not defeat, nullify or thwart it....

*Id.,* 237 S.W.2d at 278. In the absence of controlling law, this Court must assume the Texas Supreme Court's task of determining legislative intent for the enactment of this statute.

Article 5536a, the predecessor to Section 16.008, was first enacted by the 61st Legislature in 1969. The title of the Act is "Limitations of Actions Against Architects and Engineers." Chapter 418, Section 1, 1969, Tex.Gen.Law, Local and Specific 1379. The emergency clause provides that, "the fact that registered or licensed engineers or architects ... have unlimited time liability for their acts ... creates an emergency...." As plainly set out in the title, emergency clause, in the body of the statute, Section 16.008 addresses only two

classes of persons who are entitled to protection—architects and engineers.

In *Ellerbe v. Otis Elevator Co.,* 618 S.W.2d 870 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd, n.r.e.), the Court of Appeals found that only registered or licensed engineers and architects are protected under Section 1. This finding was based on the fact that "the title of the Act refers to any registered or licensed engineer or architect, and the emergency clause refers to registered or licensed engineers or architects only...." *Id.* at 872. The statute is plain and unambiguous, and it speaks clearly and unequivocally to architects and engineers, and no other class.

Grace cites *Ellerbe* as a case in which "the court directly addressed the question of whether the Statute of Repose applies to a company that employs architects and engineers who design products...." (Grace Brief, P. 9). This assertion is incorrect. Even though the summary judgment evidence established "that the elevator was designed by a registered engineer and architect employed by Otis Elevator Company ...," *id.* at 872, the court did not find that Section 1 was applicable. Rather, the court affirmed the judgment because "Section 2 of Article 5536(a) [was] a sufficient basis for the summary judgment in favor of the Otis Elevator Company...." *Id.* Otis Elevator was not afforded protection under Section 1 [16.008] because the engineers and architects did not provide the type of architectural or engineering services which the legislature sought to protect in enacting Article 5536a.

Clearly the legislature sought to protect a particular class of construction professionals—architects and engineers. As the First Court of Appeals in *Sowders v. M.W. Kellogg Co.,* 663 S.W.2d 644 (Tex.Civ. App.—Houston [1st Dist.] 1983, writ ref'd, n.r.e.), noted in addressing a plaintiff's claim that this statute violated the equal protection clause:

> We reaffirm our holding in *Ellerbe* that the classification adopted in Article 5536(a) bears a rational relationship to a legitimate state interest, *that being to relieve architects, engineers and con-*

*tractors* from the burden of indefinite potential liability for past construction projects over which they no longer have control.

*Id.* at 648.

In *McCulloch v. Fox & Jacobs, Inc.*, 696 S.W.2d 918 (Tex.Civ.App.—Dallas 1985, writ ref'd, n.r.e.), the Dallas Court of Appeals discussed the general purposes of the statute, stating:

The statute demonstrates legislative recognition of the protracted and extensive vulnerability to lawsuits of architects, engineers, and others within its purview ... As a result of judicial erosion of the privity of contract defense and judicial adoption of the discovery rule for accrual of a cause of action, *construction professionals* are subjected to expanded liability and, consequently escalation of insurance rates....

Further, the *construction professional* exercises little, if any, control over the property once the construction is complete.... Thus, balancing the legislative purpose against individual interests, we conclude that the ten year ceiling is a reasonable means of addressing these issues and enabling *construction professionals* and their insurance carriers to calculate probable liability without unreasonably compromising the rights of an injured party to bring a cause of action....

*Id.* at 924–925. (Emphasis added).

"The mere fact that a firm or company has a person in its employ who is an engineer does not make the firm an engineer with the meaning of Section 16.008...." *Kazmir v. Suburban Homes Realty*, 824 S.W.2d 239 (Tex.App.—Texarkana 1992); *see also, McCulloch v. Fox & Jacobs, Inc., supra.* Rather, one must look to the type of service provided. Section 16.008 protects a very limited class of construction professionals—registered and licensed architects and engineers.

Having concluded that Section 16.008 does not protect Grace, the Court must now determine the legislature's intent in adopting Article 5536a(2). This task is much easier, as Plaintiffs have provided the Court with certified transcripts from the Custodian of the Committee on House Administration of the proceedings of the House Judiciary Committee and the House of Representatives concerning the amendment to Article 5536(a).[1]

In 1975, the legislature amended Article 5536a. House Bill 1105 [Article 5536a(2)] was introduced by Representative DeWitt Hale. The purpose of the amendment was to extend the original coverage afforded architects and engineers to contractors who come along and build a building in accordance with the architect's plans and specifications.

The House sponsor in testifying before the Judiciary Committee stated:

The purpose of this bill and it's modeled on the bill that was passed for architects and engineers is to put a 10-year statute of limitations on these actions. And the bill simply provides that, that after the substantial completion of any improvement to real property, then if there is any defect in the construction, then the cause of action growing out of that must be filed within 10 years after the completion date and not thereafter. That's as against the contractor or the builder....

(Jud.Com.Hearing Tr. p. 3). Mr. Hale then went on to discuss that the amendment would not eliminate any individuals' cause of action who was injured in a building after 10 years. Rather, "you are only killing it as to the contractor who built the building...." (Jud.Com.Hearing Tr. p. 10).

Representatives of the Associated General Contractors of Texas, Building Branch, testified concerning the amendment and its intended effect (Jud.Com.Hearing Tr. pp. 6–10). Paul Bell, a member of the Execu-

**1.** Beginning 1973, the House of Representatives electronically recorded its committee hearings as well as the proceedings before the full House. These proceedings will be referred to as follows: Committee of the Judiciary, House of Representatives, April 1, 1975 (Jud.Comm.Hearing Tr. p. ___) and proceedings of the House of Representatives, April 22, 1975 second reading (H.R. Tr. p. ___).

tive Committee, stated "this bill only asks that we contractors be given the same consideration by you gentlemen that you gave to the architects and engineers back in 1969." (Jud.Com.Hearing Tr. pp. 8–9). Joe Fulton, the President of the Association, asserted that

The bill that has been proposed by Representative Hale is not a new concept since many states now have similar laws for architects, engineers, and contractors ... This statute of limitations was passed in 1969 for architects and engineers and the proposed bill merely provides us with the same protection that has been afforded the architects and engineers in the state. Stated simply, it seems only fair that there should be some time, after which we as contractors would not have to defend ourselves for something long passed after witnesses are dead and the trail is cold....

(Jud.Com.Hearing Tr. p. 10).

The only amendment to the bill as proposed by Mr. Hale was the deletion of a provision which exempted improvements of real property designed primarily for use as a single-family residence. (Jud.Com.Hearing Tr. p. 11).

In laying out the bill for consideration before the full House, Mr. Hale again discussed that H.B. 1105 was "designed to add one additional statute of limitations growing out of lawsuits involving contractors and construction work." (H.R. Tr. p. 1). This problem, he noted, was due to the fact that the courts had eliminated the "rule of construction known as the 'Privity of Contract Doctrine' which required that in order to sue a contractor you had to be in privity with him and that third parties had no cause of action against him." (H.R. Tr. p. 1). Throughout the debate of this bill, it was discussed that the purpose of the 1975 amendment was merely to extend the coverage previously afforded to licensed engineers or architects to contractors. As Representative Willis succinctly stated:

In essence what this bill really does, does it not, you've got an architect, you've got an engineer, and you've got a contractor,

building these buildings. And under the present law, the architect and engineer only have a 10–year statute of limitation from which they have to have insurance; and there is a discrimination at present against the contractor and your bill simply removes that. Is that right?

Mr. Hale: That's right.

(H.R. Tr. p. 14).

A thorough review of the legislative proceedings, before both the House Judiciary Committee and subsequently the House debate, clearly indicates that the intention of the legislature in adopting the amendment to Article 5536a was to extend the protection afforded to architects and engineers to a new class of construction professional—contractors and repairers.

A review of the Texas cases discussing the application of Sections 16.008 and 16.-009, however, seems to raise more questions than it resolves. Much of this confusion would appear to be due to the fact that none of these courts were afforded the opportunity to review the extensive legislative history provided by the Plaintiffs in this case. As a result of this failure, what was intended to be a very simple, straightforward statute has become one mired in confusion.

The Defendants principally rely upon *Ellerbe v. Otis Elevator Co.*, 618 S.W.2d 870 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd, n.r.e.); *Dubin v. Carrier Corp.*, 731 S.W.2d 651 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Rodarte v. Carrier Corp.*, 786 S.W.2d 94 (Tex.App.—El Paso 1990, writ dism'd) and *Ablin v. Morton Southwest Co.*, 802 S.W.2d 788 (Tex.App.—San Antonio 1990), to support their claim that they are entitled to the protection afforded by Section 16.009. Defendants claim that they are entitled to this protection because they manufactured products installed within a building and therefore "constructed or repaired an improvement to real property" (Section 16.009). Such reliance is misplaced.

Defendants' reliance on *Ellerbe* for the proposition that one who manufactures a product subsequently installed within a building is afforded protection by Section

16.009 is unfounded. In *Ellerbe*, the court found that "Article 5536a was amended by adding Section 2 extending the protection of the Act to 'any person' performing or furnishing *construction or repair* of any improvement on real property...." (Emphasis added). *Id.* at 872. The court went on to hold that "the manufacture[r] (sic) of the elevator would be a person performing or furnishing construction of the elevator even though it did not install it in the building...." Defendants argue that the court, by using the term "manufacturer," intended to afford coverage to all manufacturers of construction products. However, the *Ellerbe* court's subsequent consideration of the due process and equal protection arguments clearly indicates that this was not its intention. There the court stated:

> The Texas statute applies to architects, engineers, and 'any person' performing or furnishing construction or repair of any improvement to real property. It excludes from its protection persons in possession or control of real property, such as owners, lessors, and tenants. *We do not determine whether materialmen come within the statutory language. Even though they may be excluded, we find the statute constitutional since such exclusion would be founded on a valid distinction.* The distinctions have been discussed in various decisions of courts of other states, some finding them valid, and others reaching an opposite conclusion. *We are in general agreement with the reasoning of the Louisiana Supreme Court in Burmaster v. Gravity Drainage District No. 2*, 366 So.2d 1381 (La.1978). Other cases which we have found persuasive are *Carter v. Hartenstein*, 248 Ark. 1172, 455 S.W.2d 918 (Ark.1970), *Freezer Storage Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (Pa.1978), *Howell v. Burk*, 90 N.M. 688, 568 P.2d 214 (C.A., N.M.1977), and *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662 (N.J.1972).

*Id.* at 873 (emphasis added).

Even though the court in *Ellerbe* found it unnecessary to determine whether materialmen (i.e., manufacturers and suppliers) came within the statutory language, it specifically concluded, that if materialmen were excluded, "such exclusion would be founded on a valid distinction, citing with approval *Burmaster v. Gravity Drainage District No. 2*, 366 So.2d 1381 (La.1978)." There, the Louisiana Supreme Court had found that materialmen may be excluded from the coverage of this statute because

> [s]uppliers and manufacturers, who typically supply and produce components in large quantities, make standard goods and develop standard processes. They can thus maintain high quality control standards in the controlled environment of the factory. On the other hand, the architect or contractor can pretest and standardize construction designs and plans only in a limited fashion.

*Id.* at 1383.

In addition to *Burmaster*, the *Ellerbe* court cited four additional cases as persuasive. In these cases, the exclusion of materialmen was upheld because there was a reasonable distinction between architects and builders who provide traditional construction services and materialmen who manufacture standardized products not requiring any specialized expertise. As the Pennsylvania Supreme Court stated in *Freezer Storage Inc.*,

> suppliers, who typically produce items by the thousands, can easily maintain high quality-control standards in the controlled environment of the factory. A builder, on the other hand can pretest his designs and construction only in limited ways—actual use in the years following construction is their only real test. Further, every building is unique and far more complex than any of its component parts....

*Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (Pa.1978).

The *Ellerbe* court clearly recognized a distinction between construction professionals and manufacturers of mass-produced products. This finding is consistent with, and clearly supported by, the legislative history for enactment of Section 16.009.

Two years after the *Ellerbe* decision, the San Antonio Court of Appeals, in *Reddix v. Eaton Corp.*, 662 S.W.2d 720 (Tex.Civ. App.—San Antonio 1983, writ ref'd, n.r.e.), specifically addressed the question of "whether materialmen come within the statutory language of 5536(a), Section 2...." In that case, a gardener brought a products liability action against an outdoor elevator component parts manufacturer. An individual had actually constructed the elevator, which consisted of an electric hoist, a prefabricated steel cage, a supporting structure and a lifting mechanism which was a steel load chain. The lifting mechanism included an electric hoist manufactured by Eaton, and chains in the hoist mechanism manufactured by Campbell Chain Company.

The *Reddix* defendants argued that they occupied the same status as did Otis Elevator in *Ellerbe*, claiming protection of 5536a(2). The Court of Appeals, relying on *Ellerbe*, held that Article 5536a applies to architects, engineers, and any person performing construction or repair of the improvement. Unlike Otis Elevator, however, in *Reddix*, none of the defendants had constructed the elevator unit. Rather each of them manufactured various component parts.

> The court then defined materialman as a person who does not engage in the business of building or contracting ..., but who manufactures, purchases or keeps for sale materials which enter into buildings and who sells or furnishes such material without performing any work or labor in installing or putting them in place....

*Id.* at 724. Applying this definition, the Court concluded that

> [u]nder the statutory language, a materialman who does no more than manufacture or supply materials does not benefit from the statute. *See Carter v. Hartenstein*, 248 Ark. 1172, 455 S.W.2d 918, 920–921 (Ark.1970); *Skinner v. Anderson*, 38 Ill.2d 455, 231 N.E.2d 588, 591 (Ill.1967); *Reeves v. Ille Elec. Co.*, 170 Mont. 104, 551 P.2d 647, 652–53 (Montana 1976); *Howell v. Burk*, 90

N.M. 688, 568 P.2d 214, 219–20 (C.A.N.M. 1977).

*Id.* Once again, the cases relied upon in *Reddix*, found a reasonable distinction between the class of individuals sought to be protected by the statute, architects and contractors, versus materialmen who manufacture mass-produced goods.

Had the *Reddix* opinion stopped after the above-referenced quotation, many of the problems in applying this statute may have been resolved. However, the court went on to state that

> for the reasons stated, we hold that component part manufacturers are not protected by Section 2 of Article 5536(a)....

*Id.* By using the phrase "component parts," it appeared that a distinction was drawn between types of manufacturers, some of which are protected and others which are not. However, "the reason stated ..." for excluding materialman was not because they manufactured component parts. Rather, materialmen were excluded because they were not within the class protected—architects, engineers or contractors. *Reddix* merely reaffirms the *Ellerbe* finding that only construction professionals, not manufacturers of standardized construction products, are protected by the statute.

The Texas Supreme Court has addressed the application of Section 16.009 on only one occasion—*Conkle v. Builders Concrete Products Mfg. Co.*, 749 S.W.2d 489 (Tex.1988). In this case, the parents of a worker brought a wrongful death action against his employer and Dillon Steel, the alleged manufacturer of a concrete batch plant in which he was killed. Dillon Steel had manufactured and designed the bins and hoppers at its plant in 1956, and subsequently delivered them to Lok Rock, the original purchaser. There the bins and hoppers were joined with a mixing apparatus to form the concrete batch plant. However, there was testimony that Dillon Steel had not manufactured the mixing apparatus, and thus had not manufactured the entire structure. The Court of Appeals, in an unpublished opinion, affirmed the Trial

Court's summary judgment predicated on Section 16.009.

The Texas Supreme Court, without oral hearing, found that the "summary judgment as to Dillon Steel was improper because it failed to establish as a matter of law that Dillon constructed an improvement to real property as provided for in ... Section 16.009." *Id.* at 490. The Supreme Court cited with approval *Reddix* and *Ellerbe*, noting that "manufacturers of component parts do not come within the statutory language of Section 16.009." *Id.* at 491. The Supreme Court went on to point out that the Court of Appeals' reliance on *Ellerbe* was misplaced. It appears that the Court of Appeals had based its holding that Section 16.009 was applicable on the "proposition that a person who constructs an improvement to real property need only furnish construction, even though it does not install the item." *Id.* However, unlike Otis Elevator in *Ellerbe*, the summary judgment evidence failed to establish that Builders Concrete had constructed the entire unit. Rather, Dillon Steel only manufactured the hoppers and bins.

The Texas Supreme Court's approval of *Reddix* and *Ellerbe* is important because it once again approves the rationale adopted in these two cases and *Sowders*—that merely manufacturing a product which becomes an improvement to real property does not afford one protection of the statute. Clearly Dillon Steel had manufactured the bin in which the worker was killed. Yet, an issue of fact remained concerning the status of Dillon Steel in the construction process. As the Court of Appeals in *Ellerbe, Reddix* and *Sowders* observed, and as the legislative history confirms, the legislature intended to protect a limited class of construction professionals—architects, engineers and contractors, not manufacturers of mass-produced goods and products.

One might argue that the Supreme Court's finding that the summary judg-

ment evidence raised an issue of fact as to "whether Dillon Steel manufactured the entire unit or component parts only," *id.*, indicates an intention to distinguish between manufacturers of an improvement from component part manufacturers. This, however, would be contrary to the distinction between construction professionals and manufacturers of mass-produced products previously adopted and found to be constitutional in *Ellerbe, Reddix and* Sowders, supra, *which the Supreme Court had previously given its stamp of approval by denying the writ application as "n.r.e."*

As a result of the Texas courts failure to consistently employ the term "construction" when dealing with specially designed or constructed improvements for particular buildings, and "manufacture" where dealing with standardized, mass-produced and supplied products, we are faced with the dilemma of trying to apply an ambiguous standard in determining the protection afforded by the statute.

A much more difficult, if not impossible, task confronts this Court in attempting to reconcile the decisions in *Dubin v. Carrier Corp.* and *Rodarte v. Carrier Corp.* with the legislative intent as previously discussed.

In their Motion for Summary Judgment, Defendants cite *Dubin v. Carrier Corp.*, 731 S.W.2d 651 (Tex.App.—Houston [1st Dist.] 1987, no writ), *aff'd after remand*, 798 S.W.2d 1 (Tex.App.—Houston [14th Dist.] 1989, writ dism'd), and *Rodarte v. Carrier Corp.*, 786 S.W.2d 94 (Tex.App.— El Paso 1990, writ dism'd) as controlling. In both of these cases, the court of appeals barred claims against the manufacturer or distributor of a furnace, applying Section 16.009. The Court finds that these decisions are not controlling, as they are contrary to the legislative intent and the law as stated in *Ellerbe, Reddix,* and *Conkle.*[2]

**2.** The Texas Supreme Court found no reversible error in the *Ellerbe* and *Reddix* decisions. See, Robertson and Paulson, "The Meaning (If Any) of an 'N.R.E.,' " TEX.BAR J. 1306 (Dec.1985) ("The 'n.r.e.' stamp is in every sense a decision on the merits of the appeal.") A review of the writ history in *Dubin* and *Rodarte* indicates that the Supreme Court was never called upon to approve these findings as no writ was filed or the writ was dismissed by agreement.

In the initial decision, *Dubin v. Carrier Corp.*, 731 S.W.2d 651 (Tex.App.—Houston [1st Dist.] 1987, no writ), the First Court of Appeals, relying on *McCulloch v. Fox & Jacobs*, determined that Carrier "functioned as a manufacturer of an improvement ..." *id.* at 655, and therefore was entitled to immunity under Section 16.009. In fact, the heater in question was not designed or manufactured by Carrier. Rather, Carrier merely "marketed and distributed" the unit. Carrier was undisputedly a manufacturer or supplier, not a "contractor" or "repairer" as envisioned by the legislature in its adoption of Section 16.009.

In *Rodarte v. Carrier Corp.*, 786 S.W.2d 94 (Tex.App.—El Paso 1990, writ dism'd), the court of appeals granted immunity to Carrier, the manufacturer of the heater, pursuant to Section 16.009. In that case the court of appeals summarily dismissed the argument that Carrier was not entitled to protection as it was only a supplier or materialman. Rather, the court specifically found that "the statute only requires that the particular item in question be 'an improvement to real property.'" *Id.* at 95. The elimination of the threshold requirement that one be a constructor or repairer is clearly contrary to the legislative intent. If the legislature had sought to afford immunity to manufacturers of products, it could have easily done so. However, the legislative history and the language employed in the statute indicates there was no such intent.

Defendants' reliance on *Ablin v. Morton Southwest Co.*, 802 S.W.2d 788 (Tex.App.—San Antonio 1990) is misplaced. There, the plaintiff homeowner brought suit against Morton Southwest Company and Overhead Door Company. The summary judgment evidence established that Morton Southwest constructed the house in question. In turn, Morton Southwest contracted with Overhead Door to supply and install a garage door opener in the house. The plaintiffs claimed that Overhead Door installed the wrong garage door opener—Morton Southwest had ordered an "Alliance" brand

garage door opener, but a "Relaythron" was installed. The Court of Appeals affirmed the trial court's grant of summary judgment based on Section 16.009. Since Overhead Door had installed the garage door opener, it was a constructor or repairer as required by the statute. This issue, however, was never addressed. Rather, the issue raised was whether the product was an improvement to real property and if so, whether Overhead Door was guilty of fraudulent concealment so as to bar the application of 16.009. This decision does not justify Defendants' claim that manufacturers of products come within the purview of the statute.

The issue raised by Defendants was recently addressed by the North Dakota Supreme Court at the request of the United States Court of Appeals for the Eighth Circuit. In *Hebron Public School District No. 13 of Morton County, State of North Dakota v. United States Gypsum Company*, 475 N.W.2d 120 (N.D.1991), the Eighth Circuit certified to the Supreme Court of North Dakota the following issue:

(2) whether N.D.Cent.Code Section 28–01–44 (Cum.Supp.1989) applies to a manufacturer of building materials used in an improvement to real property.

The North Dakota Supreme Court answered this question in the negative, citing its decision in *Vantage, Inc. v. Carrier Corp.*, 467 N.W.2d 446 (N.D.1991), wherein it had found that the Statute of Repose was not designed to protect manufacturers of a furnace installed in a building because manufacturers were not within the class protected. The North Dakota statute was intended to cover "architects, contractors, engineers and inspectors."

Like the North Dakota Statute of Repose, the Texas statute is predicated on the type of service provided rather than the Defendants' connection to the improvement. This distinction was discussed by the United States Court of Appeals for the Fourth Circuit in *First United Methodist Church of Hyattsville v. U.S. Gypsum*, 882 F.2d 862 (4th Cir.1989), in interpreting

the Maryland Statute of Repose.[3] There, the plaintiff argued that the statute was not intended to apply to U.S. Gypsum Company, a manufacturer of an acoustical plaster product. The court found the Maryland statute was "completely silent as to any limitation on the class of persons it protects ...," *id.* at 865, and thus afforded U.S. Gypsum protection. The court reasoned that "the language creates an immunity which turns on the defendant's connection to the improvement rather than on the type of service the defendant rendered." *Id.* at 865. Sections 16.008 and 16.009 of the Texas Statute, however, are not silent. Rather, they expressly limit their application to a class of persons providing a particular service—architectural and engineering or constructing or repairing.

The Defendants herein are the manufacturers of asbestos-containing ceiling plaster and fireproofing materials. These materials are delivered to the job site in bags where they are then mixed with water and other additives and either troweled or spray-applied. The product formulation does not vary from job-to-job. Rather, it is a standardized, off-the-shelf, mass-produced product, manufactured in a controlled environment with ample opportunity for quality control and pretesting. Defendants are not within the class of construction professionals sought to be protected by Sections 16.008 and 16.009.

The Court, therefore, finds that the Defendants' Motion for Summary Judgment based on Tex.Civ.Prac. & Rem.Code, Section 16.008 and Section 16.009 should be, in all things, DENIED.

**3.** The Maryland Statute of Repose, Section 5.108, reads in pertinent part, as follows:
(a) Injury Occurring More Than Twenty (20) Years Later.—Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than twenty (20) years after the date the entire improvement first becomes available for its intended use.