Cathy WILLIAMS, et al., Appellants,

v.

U.S. NATURAL RESOURCES, INC. D/B/A Friedrich Air Conditioning and Refrigeration Company, Appellee.

No. 10–92–250–CV.

Court of Appeals of Texas, Waco.

Sept. 15, 1993.

**204**

Susan Kelley-Claybrook, Les Palmer & David Dumas, Haley, Davis, Wren, Bristow & Rasner, Waco, for appellants.

Solace H. Kirkland & Ellen Finlay, Mayor, Day, Caldwell & Keeton, L.L.P., George M. Bishop & K. Charles Peterson, Bishop, Peterson & Sharp, Houston, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

■ Cathy Williams and Krystal Stanberry sued U.S. Natural Resources, Inc., the manufacturer of a defective furnace, to recover damages from a house fire caused by the furnace. They filed suit more than ten years after the furnace was installed in 1973. U.S. Natural Resources had nothing to do with its installation. The court entered a summary judgment in favor of U.S. Natural Resources based on the statute of repose. *See* TEX.CIV. PRAC. & REM.CODE ANN. § 16.009(a) (Vernon 1986). We hold that the legislature did not intend the statute to protect U.S. Natural Resources, the manufacturer, when it did not install the furnace in the home. Accordingly, we reverse the summary judgment and remand the cause for trial.

## LEGISLATIVE HISTORY

The legislature first enacted article 5536a, the original statute of repose, in 1969 to bar claims "against any registered or licensed engineer or architect." Act of June 2, 1969, 61st Leg., R.S., ch. 418, § 1, 1969 Tex.Gen. Laws 1379. That original provision, now section 16.008 of the Civil Practice and Remedies Code, is not material to this appeal, except as it bears on the legislature's intent in later expanding the statute's coverage. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 16.008.

In 1975 the legislature amended article 5536a by adding section 2, thereby extending protection to "any person performing or furnishing construction or repair of any ... improvement [to real property]." Act of May 20, 1975, 64th Leg., R.S., ch. 269, § 2, 1975 Tex.Gen.Laws 649. Section 2 of article 5536a now appears in this codified language as section 16.009 of the Civil Practice and Remedies Code:

> (a) A claimant must bring suit for [injury, damage, or loss to real or personal property] against a person who constructs or repairs an improvement to real property not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a

deficiency in the construction or repair of the improvement.

TEX.CIV.PRAC. & REM.CODE ANN. § 16.009(a).

## LEGISLATIVE INTENT

Whether U.S. Natural Resources enjoys the protection of the statute of repose necessarily depends upon the ascertainment of legislative intent, the ultimate goal of all statutory construction. *See City of Mason v. West Texas Utilities Co.*, 150 Tex. 18, 237 S.W.2d 273, 278 (1951). Only the federal courts have made a serious attempt at determining what the legislature intended when it enacted section 2 of article 5536a, now section 16.009. When faced with the question of whether section 16.009 protects the manufacturer of a product installed by someone else in a building, the court in *Dayton Indep. School Dist. v. U.S. Mineral Prod.*, 800 F.Supp. 1430, 1434 (E.D.Tex.1992), reviewed the legislative history of the 1975 amendment and concluded:

> A thorough review of the legislative proceedings, before both the House Judiciary Committee and subsequently the House debate, clearly indicates that the intention of the legislature in adopting the amendment to Article 5536a was to extend the protection afforded to architects and engineers to a new class of construction professional—contractors and repairers.

The court reproduced excerpts from the committee testimony of interested witnesses and the amendment's sponsor, as well as excerpts from the floor debate, to back up its ascertainment of legislative intent. *Id.* at 1433–34.

The *Dayton* court then reviewed the Texas cases applying section 16.009, including the authority U.S. Natural Resources relies on in this appeal. *See Ellerbe v. Otis Elevator Co.*, 618 S.W.2d 870 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Dubin v. Carrier Corp.*, 731 S.W.2d 651 (Tex.App.–Houston [1st Dist.] 1987, no writ) ("Dubin I"); *Dubin v. Carrier Corp.*, 798 S.W.2d 1 (Tex.App.—Houston [14th Dist.] 1989, writ dism'd by agr.) ("Dubin II")[1]; *Rodarte v. Carrier Corp.*, 786 S.W.2d 94 (Tex.App.–El Paso

1990, writ dism'd by agr.). Noting the confusion in the Texas case law, the court explicitly refused to follow the holdings in *Dubin* I and *Rodarte*, in which the manufacturers of a heating or air conditioning unit were afforded protection of the statute of repose even though they had not installed the units in the building. See *Dayton Indep. School Dist.*, 800 F.Supp. at 1437. *Dubin* I and *Rodarte* were not controlling, the court said, because their holdings are contrary to legislative intent and, in effect, eliminate the statute's "threshold requirement" that one seeking repose must be a "constructor or repairer" of an improvement to realty. *Id.* at 1438.

Concluding that "the legislature intended to protect a limited class of construction professionals—architects, engineers and contractors, *not manufacturers of mass-produced goods and products*," the *Dayton* court finally held:

> The Defendants herein are the manufacturers of asbestos-containing ceiling plaster and fireproofing materials. These materials are delivered to the job site in bags where they are then mixed with water and other additives and either troweled or spray-applied. The product formulation does not vary from job-to-job. Rather, it is a standardized, off-the-shelf, mass-produced product, manufactured in a controlled environment with ample opportunity for quality control and pretesting. *Defendants [i.e., the manufacturers] are not within the class of construction professionals sought to be protected by Sections 16.-008 and 16.009.*

*Id.* at 1437, 1439 (emphasis added). Based on its analysis of the legislative intent and the review of relevant Texas authority, the federal district court denied the manufacturers' motion for a summary judgment based on the statute of repose. *Id.* at 1439.

The Fifth Circuit in *Dedmon v. Stewart–Warner Corp.*, 950 F.2d 244 (5th Cir.1992), also examined the Texas cases applying section 16.009. The court struggled with the difficulty of trying to harmonize the "product-oriented focus" of some decisions—i.e., an

---

1. The *Dayton* court cited but did not discuss *Dubin v. Carrier Corp.*, 798 S.W.2d 1 (Tex.App.—Houston [14th Dist.] 1989, writ dism'd by agr.), otherwise known as "Dubin II." *Dayton Indep. School Dist. v. U.S. Mineral Prod.*, 800 F.Supp. 1430, 1437 (E.D.Tex.1992).

approach that grants repose to manufacturers of mass-produced products intended for use as improvements to real property even though they never installed the product on the realty—and the "construction-industry professionals" approach, which requires the party seeking repose to be an actual constructor or repairer of an improvement to realty. *Id.* at 249–50.

"We suspect," the Fifth Circuit wrote, "that the Texas Legislature intended the repose statute to protect a specific class of economic actors—construction-industry professionals who perform certain functions." *Id.* at 249. Nevertheless, the court stated:

> If we look for the correct analysis in the legislative intent of protecting architects, engineers, and contractors, we might be inclined to draw a boundary [of the statute's protection] that includes only those persons who supply "individual expertise not susceptible of the quality control standards of the factory" [footnote omitted] and excludes manufacturers or suppliers of standardized goods such as circuit breakers, garage door openers, and mass-produced heating units. However, doing so would require us to depart from an unbroken line of authority developed in several Texas appellate court decisions applying the repose statute to manufacturers of such goods intended for use as improvements.

*Id.* at 250. Citing as authority *Ablin v. Morton Southwest Co.*, 802 S.W.2d 788 (Tex. App.—San Antonio 1990, writ denied), *Dubin I*, 731 S.W.2d at 654, and *Rodarte*, 786 S.W.2d at 96, the Fifth Circuit declared that it was bound by and would follow this Texas authority adopting the product-oriented approach. *Dedmon*, 950 F.2d at 250.

What persuaded the Fifth Circuit to follow the cases using the product-oriented approach, even though it "suspected" the legislature's intent was otherwise, was its conclusion that the Texas Supreme Court had adopted the product-oriented approach in *Conkle v. Builders Concrete Products Mfg.*, 749 S.W.2d 489 (Tex.1988). See *Dedmon*, 950 F.2d at 249, 250.

As a result of the Fifth Circuit's decision in *Dedmon* and its binding effect on the trial

courts in that circuit, the district court had to reconsider its original decision in *Dayton.* Regardless, in a second opinion the district court again denied the manufacturers' motion for a summary judgment on the ground that the summary-judgment record contained genuine fact issues. *Dayton School Dist. v. U.S. Mineral Products*, 789 F.Supp. 819, 823 (E.D.Tex.1992).

We agree with the district court in *Dayton* that the excerpts from the committee hearing and floor debate clearly indicate that the legislature intended the 1975 amendment—now section 16.009—to extend protection only to constructors and repairers of improvements to real property, not to manufacturers of products who do not install them on the realty. See *Dayton Indep. School Dist.*, 800 F.Supp. at 1433–34. However, legislative intent is ultimately found in the language of the statute. See *City of Mason*, 237 S.W.2d at 278. In fact, a court cannot use the legislative record to determine legislative intent unless the statute is ambiguous on its face. See *Gibbs v. United States Guarantee Co.*, 218 S.W.2d 522, 525 (Tex.Civ.App.—Austin 1949, writ ref'd). We believe that section 16.009 is unambiguous.

Section 16.009 provides:

> (a) A claimant must bring suit for [injury, damage, or loss to real or personal property] *against a person who constructs or repairs an improvement to real property* not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement.

TEX.CIV.PRAC. & REM.CODE ANN. § 16.009(a) (emphasis added). The prepositional phrase highlighted above lies at the heart of the controversy over the statute's interpretation.

Considering the statute's plain language, we conclude that the legislature clearly intended the defendant seeking repose to meet two essential requirements. First, the defendant must be one who *constructs or repairs.* Second, that which the defendant constructs or repairs must be an *improvement to real property.* A defendant who

meets only one of the two prerequisites is not protected. Consequently, the statute will not bar a claim against a defendant who may have performed some function in relation to an improvement to real property but who cannot be considered a constructor or repairer of the improvement. Likewise, a claim will not be barred against a defendant who constructed or repaired something that is not an improvement to real property.

## HAS *CONKLE* ALREADY DECIDED THE QUESTION?

Is the Fifth Circuit correct? Has the Texas Supreme Court already decided in *Conkle* that the manufacturer is protected by the statute of repose even though it did not install the product on the realty? *Dedmon,* 950 F.2d at 250. If so, then we are bound by that holding.

Some of the confusion in *Conkle* flows from the citation and discussion of two cases: *Reddix v. Eaton Corp.,* 662 S.W.2d 720 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.), and *Ellerbe,* 618 S.W.2d 870. See *Conkle,* 749 S.W.2d at 491. We will briefly examine *Ellerbe* and *Reddix* and, finally, *Conkle.*

### Ellerbe v. Otis Elevator

Kenneth Ellerbe died when he fell down an open elevator shaft. The plaintiff sued Otis Elevator, the elevator's designer and manufacturer, alleging a defective elevator design. Otis Elevator had not installed the elevator in the building. The trial court granted Otis Elevator a summary judgment based on the statute of repose. *Ellerbe,* 618 S.W.2d at 871. Faced with those facts, the court of appeals stated:

> Article 5536a . . . was amended by adding section 2 extending the protection of the Act to "any person" performing or furnishing construction or repair of any improvements on real property. . . . *An elevator in a multi-storied building obviously constitutes an improvement on real property. The manufacturer of the elevator would be a person performing or furnishing construction of the elevator even though it did not install it in the building. . . .* Section 2 of Article 5536a is a

sufficient basis for the summary judgment in favor of Otis Elevator Company.

*Id.* at 872 (emphasis added).

### Reddix v. Eaton Corp.

Wilbert Reddix sued Eaton Corporation for injuries he received in the fall of an outdoor elevator. Eaton had manufactured the elevator's lifting mechanism using link chain furnished by Campbell Chain. Smith Brothers Welding Company constructed the elevator using Eaton's hoisting mechanism. Eaton had nothing to do with the elevator's installation on the realty. The trial court granted Eaton Corporation a summary judgment based on article 5536a. *Reddix,* 662 S.W.2d at 721–22. Reddix contended that the statute of repose does not apply to product manufacturers as a matter of law. *Id.* at 723. Eaton argued, however, that the decision in *Ellerbe* established that the designer and manufacturer of *component parts* of a product are protected by the statute. *Id.* at 724.

The court of appeals rejected Eaton's attempt to narrow the controlling question to whether the statute protected manufacturers of component parts. Instead, the court posed and answered the controlling issue this way:

> The question squarely before us is whether *materialmen* come within the statutory language of article 5536a, § 2, *supra.* We answer the question in the negative. Section 2 of article 5536a, *supra,* protects "any person performing or furnishing construction or repair of any such improvement [to realty]." *Under the statutory language, a materialman who does no more than manufacture or supply materials does not benefit from the statute. . . .* For the reasons stated, we hold that component part manufacturers are not protected by section 2 of article 5536a, *supra.*

*Id.* (emphasis added). The court noted that *Ellerbe* had expressly left open the question "whether materialmen come within the statutory language." *Id.* (quoting *Ellerbe,* 618 S.W.2d at 873).

The court in *Reddix* defined a "materialman" as follows:

A materialman in Texas case law has been defined as a person *who does not engage in the business of building or contracting* to build homes for others, but who *manufactures,* purchases or keeps for sale materials which enter into buildings and who *sells* or furnishes such material *without performing any work or labor in installing or putting them in place.*

*Reddix,* 662 S.W.2d at 724 (citing *Huddleston v. Nislar,* 72 S.W.2d 959, 962 (Tex.Civ.App.— Amarillo 1934, writ ref'd) (emphasis added by the *Reddix* court)).

After stating the controlling question and answering it in the same paragraph—"[A] materialman who does no more than manufacture or supply materials does not benefit from the statute"—the court in the very next sentence inexplicably stated its holding this way: "For the reasons stated, we hold that component part manufacturers are not protected by section 2 of article 5536a." *Reddix,* 662 S.W.2d at 724. Stating the holding in this manner leaves the impression that the rationale for denying Eaton Corporation repose was not that it was a materialman but was because it had manufactured only a component part of the elevator. Of course, the only "reasons stated" by the court in advance of its holding were that a materialman is not covered by the statute.

Considering the definition of materialman, the only rationale for disqualifying Eaton Corporation from protection under the statute was its failure to install the elevator on the realty, not because it had only manufactured a component part. Any other conclusion would make the definition of materialman superfluous and ignore the controlling question posed by the court. Accordingly, we interpret the holding in *Reddix* as being based on the only rationale that makes sense under the definition. A materialman does not construct an improvement to realty; Eaton Corporation was a materialman; therefore, Eaton was excluded from the statute's coverage.

### Conkle v. Builders Concrete Products

Douglas Conkle died in the bottom of a bin that was part of a concrete batch plant. His family sued Dillon Steel, the manufacturer of the bin, but the trial court granted a sum-

mary judgment for Dillon Steel based on the statute of repose. *Conkle,* 749 S.W.2d at 490. The court of appeals affirmed in an unpublished opinion. However, the Supreme Court in a per curiam opinion, and without hearing oral argument, reversed the summary judgment because Dillon Steel "failed to establish as a matter of law that [it] constructed an improvement to real property as provided for in ... § 16.009." *Id.* There was evidence, the Court noted, that the batch plant was portable. *Id.* at 491.

If the Supreme Court had stopped with its explanation at that point, the rationale for its holding would have been clear. Dillon Steel had failed to meet a statutory prerequisite—i.e., the batch plant was portable and thus did not qualify as an improvement to realty. Unfortunately, however, the Court clouded its rationale by also mentioning that a fact question existed whether Dillon had manufactured the entire batch plant or only a component part. *Id.* The court of appeals had relied on *Ellerbe* in affirming the summary judgment in favor of Dillon Steel. *Id.* However, the Supreme Court distinguished *Ellerbe* from the facts before it by recognizing that in *Ellerbe* Otis Elevator had manufactured the entire unit, not just a component part. *Id.*

Moreover, the Supreme Court cited *Reddix* for this legal proposition: "Manufacturers of component parts do not come within the statutory language of section 16.009." *Id.* By choosing this erroneous rationale from *Reddix,* the Court necessarily leaves the impression in *Conkle* that Dillon Steel was also denied repose because it had not manufactured the entire batch plant. As discussed above, we consider the true rationale in *Reddix* to be that the manufacturer was a materialman and thus had not constructed an improvement to realty.

What does *Conkle* mean and what is its binding effect as precedent? The Supreme Court reversed the summary judgment because the manufacturer failed to conclusively establish that it had "constructed an improvement to real property as provided for in ... § 16.009." *Id.* at 490. Thus, the reason given for reversing the summary judgment is

consistent with a basic requirement of the statute, i.e., the defendant must construct or repair *an improvement to realty*. We interpret the decision in *Conkle* as being entirely consistent with the requirements of the statute and with the legislative intent expressed in its language. We do not interpret *Conkle* as explicitly or implicitly holding that the manufacturer of a product is protected by the statute of repose even though it does not install the product on the realty. Unlike the Fifth Circuit in *Dedmon*, we do not consider the Texas Supreme Court as having adopted the so-called "product-oriented approach" in *Conkle. See Dedmon*, 950 F.2d at 249, 250. Consequently, we do not believe the Supreme Court has already decided the issue before us.

### TEXAS AUTHORITY

We decline to follow the decisions in *Ellerbe*, 618 S.W.2d 870, *Dubin* I, 731 S.W.2d 651, *Rodarte*, 786 S.W.2d 94, and *Dubin* II, 798 S.W.2d 1, because they are contrary to legislative intent and ignore the statutory requirement that the defendant seeking repose must have constructed or repaired an improvement to realty. These decisions grant the manufacturer repose if it does nothing more than furnish the construction of *personalty*. Moreover, they mistakenly equate the construction of personalty—i.e., the elevator, the heater, or an air conditioning unit—with the construction of an improvement to realty. In short, they make constructors of an improvement to real property out of materialmen who do nothing more than supply personalty.

We believe instead that the definition of materialmen in *Reddix*, 662 S.W.2d at 724, which treats every manufacturer as a materialman unless it installs the product on the realty, provides the correct basis for determining coverage under section 16.009. Consequently, whether a defendant manufactures all or only a component part of a product is immaterial in determining coverage. Rather, the crucial inquiry under the definition of materialman is whether the manufacturer actually installed the product on the realty—i.e., whether the manufacturer actually *constructs an improvement to realty*

as the statute requires. We consider *Ablin*, 802 S.W.2d 788, which granted repose to the manufacturer of an automatic garage-door opener who installed it, to be consistent with legislative intent and the requirements of section 16.009.

### DISPOSITION

U.S. Natural Resources had manufactured the heating furnace but did not install it. Based on our analysis of legislative intent, the requirements of section 16.009, and relevant authority, we hold that U.S. Natural Resources is not protected by the statute of repose as a matter of law. Thus, the court erred when it granted the summary judgment on that ground. We sustain point one, reverse the summary judgment, and remand the cause for a trial. We do not reach the remaining points.

VANCE, J., concurs.

VANCE, Justice, concurring.

I write separately because, guided by the Code Construction Act (the Act), Chapter 311 of the Government Code, I believe that the benefits of the statute of repose in question should be available only to contractors, their subcontractors, and the agents, servants and employees of each. *See* TEX. GOVT.CODE ANN. § 311.001–311.032 (Vernon 1988 & Supp.1993); TEX.CIV.PRAC. & REM. CODE ANN. § 16.009 (Vernon 1986). Thus, I concur in the holding that the statute is inapplicable to the manufacturer of a heating unit installed by others on real property.

Chapter 312 of the Government Code ("Construction of Laws") provides that, in interpreting a *civil statute*, a court shall attempt to ascertain *legislative intent*, considering the old law, the evil, and the remedy. TEX.GOVT.CODE ANN. §§ 312.001, 312.005 (Vernon 1988). On the other hand, the Code Construction Act, initially adopted by the 60th Legislature, applies to "each code enacted by the 60th or a subsequent legislature as part of the state's continuing statutory revision program" and "each amendment, repeal, revision, and reenactment of a code or code provision" by the 60th or a later legislature. *Id.* § 311.002. In construing a *code*, whether

or not ambiguous on its face, a court may consider, among other considerations, *the object sought to be attained* by the statute. *Id.* §§ 311.002, 311.023. I take this to mean the "purpose of the statute."

Section 16.009 is such a provision, having been adopted as part of the Civil Practice and Remedies Code (the Code) by the 61st Legislature. TEX.CIV.PRAC. & REM.CODE ANN. § 16.009. Section 16.009—formerly Article 5536a(2) of the Civil Statutes—was added to an original statute that protected only architects and engineers and provides in part:

> (a) A claimant must bring suit for damages for a claim listed in Subsection (b) against *a person who constructs or repairs an improvement to real property* not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement.

*Id.* § 16.009(a) (emphasis added). Subsection (b) lists injury, damage, or loss to real or personal property; personal injury; wrongful death; contribution; and indemnity as the types of claims covered by subsection (a). *Id.* § 16.009(b). Subsection (c) extends the period for two years from the date a notice of claim is given during the ten-year period, and subsection (d) extends the period for two years when the damage, injury, or death occurs during the tenth year. *Id.* § 16.-009(c), (d). Subsections (e) and (f) provide for exceptions not at issue here. *Id.* § 16.-009(e), (f).

The Code Construction Act directs that words and phrases be read "in context and construed according to the rules of grammar and common usage." TEX.GOVT.CODE ANN. § 311.011(a). Words that have a particular meaning by legislative definition shall be construed accordingly. *Id.* 311.011(b). Under the Act, the term "person" used in section 16.009 of the Code includes a "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." TEX.GOVT.CODE ANN. § 311.-005(2); TEX.CIV.PRAC. & REM.CODE ANN. § 16.009(a). The breadth of the term "person" eliminates it as a focus of the extent to

which section 16.009 protects defendants—all defendants are potentially protected.

Cases that have analyzed the section have discussed "actors," "products," "component parts," "entire units," "manufacturers," "materialmen," "installers," and "suppliers." *See e.g., Conkle v. Builders Concrete Prod. Mfg.,* 749 S.W.2d 489, 491 (Tex.1988); *Dedmon v. Stewart–Warner Corp.,* 950 F.2d 244, 247 (5th Cir.1992); *Dubin v. Carrier Corp.,* 798 S.W.2d 1, 2 (Tex.App.—Houston [14th Dist.] 1989, writ dism'd by agr.); *Rodarte v. Carrier Corp.,* 786 S.W.2d 94, 96 (Tex.App.—El Paso 1990, writ dism'd by agr.); *Dubin v. Carrier Corp.,* 731 S.W.2d 651, 654–55 (Tex. App.—Houston [1st Dist.] 1987, no writ); *Sowders v. M.W. Kellogg Co.,* 663 S.W.2d 644, 649 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Reddix v. Eaton Corporation,* 662 S.W.2d 720, 724 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Ellerbe v. Otis Elevator Co.,* 618 S.W.2d 870, 873 (Tex. Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), *appeal dism'd for want of substantial federal question,* 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 39 (1982).

The distinctions discussed in these cases can be avoided by either of two interpretations. The first focuses on the meaning of the phrase "person who constructs . . . an improvement to real property. . . ." So considered, section 16.009 could be interpreted to bar *all* claims arising out of the construction of improvements to real property, with the exceptions noted, at the expiration of ten years after completion of the improvements or repairs. Indeed, that construction is consistent with the result that has been reached in many of the cases decided under section 16.009. *Dedmon,* 950 F.2d at 247; *Dubin,* 798 S.W.2d at 2; *Rodarte,* 786 S.W.2d at 96; *Dubin,* 731 S.W.2d at 654–55; *Sowders,* 663 S.W.2d at 649; *Ellerbe,* 618 S.W.2d at 873.

The second interpretation would focus on the term "constructs," a proper focus under that part of the Act directing that words and phrases be read "in context and construed according to the rules of grammar and common usage." TEX.GOVT.CODE ANN. § 311.-011(a); TEX.CIV.PRAC. & REM.CODE ANN. § 16.009(a). This interpretation would limit the applicability of section 16.009 to contrac-

tors, their subcontractors, and the agents, servants, and employees of each and would be consistent with the purpose of the section as expressed by the author of the bill. He stated, "you are only killing [causes of action in favor of those injured in a building after ten years] as to the contractor who built the building...." *Dayton Indep. School Dist. v. U.S. Mineral Prod.*, 800 F.Supp. 1430, 1433 (E.D.Tex.1992). This interpretation is also consistent with the fact that the amendment was sought and supported by the Associated General Contractors of Texas, Building Branch. *Id.* at 1433–34. It has the advantage of eliminating the distinctions discussed in the cases, because all manufacturers of units, manufacturers of components and materials, materialmen, suppliers, and others not acting as contractors or subcontractors would be excluded from the protection that the section provides.

The Code Construction Act also allows us to presume that a "just and reasonable result is intended." TEX.GOVT.CODE ANN. § 311.-021(3). For me, an interpretation that restricts coverage of section 16.009 to contractors and their subcontractors is more just and reasonable than one that precludes all causes of action against all entities after the prescribed period. Limiting the protection of section 16.009 to contractors, their subcontractors, and the agents, servants, and employees of each is in keeping with a determination that the purpose of the section is to "relieve ... contractors from the burden of indefinite potential liability for past construction projects over which they no longer have control." *See Sowders*, 663 S.W.2d at 648. It does not seem just or reasonable, for example, to extinguish claims arising from defective products (including claims that the product was defective when manufactured, that it was poorly designed, or that the manufacturer failed to warn against a known risk) just because those products were installed in a construction project. Manufacturers of products intended for construction projects have no more or less control over products that leave their possession than do manufacturers of other products who must answer product-liability claims during their products' effective lives.

Because I would limit section 16.009 to contractors, their subcontractors, and the agents, servants, and employees of each, I concur in the judgment reversing the summary judgment and remanding the cause for trial.