BIG WEST OIL COMPANY, a Delaware Corporation and Flying J Inc., a Delaware Corporation, Appellants,

v.

WILLBORN BROS. CO., a Texas Corporation, Appellee.

No. 07–90–0152–CV.

Court of Appeals of Texas, Amarillo.

Aug. 20, 1992.

Garner, Stone & Lovell, P.C., Sam L. Stein, Amarillo, for appellants.

Underwood, Wilson, Berry, Stein & Johnson, P.C., Michael H. Loftin, Mark L. Packard, Amarillo, for appellee.

Before DODSON, BOYD and POFF, JJ.

DODSON, Justice.

Big West Oil Company and Flying J Inc. [collectively referred to as Big West] instituted the instant cause of action against Willborn Bros. Co. [Willborn] alleging it was liable for costs of site assessment and clean up of environmental contamination. Appealing from a summary judgment granted to Willborn, Big West contends the trial court erred in (1) holding that the underground storage tanks were improvements to real property and (2) failing to take judicial notice of certain federal regulations. We affirm.

The undisputed summary judgment proof shows Big West incurred expenses for assessment and clean up of certain environmental contamination which occurred east of Amarillo at I–40 and Airport Road. In 1968, Willborn constructed the underground storage tanks which were buried at the contamination site, but did not install them. The instant action was instituted in 1989. Willborn filed a motion for summary judgment, alleging the statute of limitations in section 16.009 of the Texas Civil Practice and Remedies Code barred any recovery as a matter of law.

Affidavits of James Anthony Baker and J Phillip Adams were filed in support of Big West's objection to Willborn's motion for summary judgment. Baker's affidavit states that he is General Manager of Interstate and Franchise Operations for Flying J. He has been an employee of Flying J since April 27, 1987. Baker further provides in his affidavit that he is familiar with the operation of petroleum marketing and distribution facilities. Baker stated in his affidavit that the underground storage tanks manufactured by Willborn "were component parts of the entire underground petroleum system." The affidavit of J Phillip Adams provided that he was executive vice president of Flying J. In paragraph seven of his affidavit, Adams stated that underground storage tanks cannot be left underground indefinitely; are not permanent fixtures and therefore cannot permanently enhance the value of the property on which they are situated. The trial court granted Willborn's summary judgment motion in which it severed all claims against other parties.

The issue on appeal is whether Willborn established as a matter of law, its entitlement to summary judgment by conclusively proving that no genuine issue of material fact exists as to its statute of limitations defense. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983); *Odeneal v. Van Horn*, 678 S.W.2d 941 (Tex.1984); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979). The burden of proof is upon the party moving for summary judgment and all doubts as to the existence of a genuine issue of a material fact are resolved against him. *Fitzpatrick v. Marlowe*, 553 S.W.2d 190, 193 (Tex.Civ. App.—Tyler 1977, writ ref'd n.r.e.).

In its first point of error, Big West contends the trial court erred in holding that the underground storage tanks were improvements to real property. We disagree. Big West asserts that the underground storage tanks are not improvements as a matter of law, but rather component parts to underground storage tank systems.

The distinction is important, because under Texas law manufacturers of component parts do not come with the statutory language of section 16.009 of the Texas Civil Practice and Remedies Code (Vernon 1986). *Conkle v. Builders Concrete Prod. Mfg. Co.*, 749 S.W.2d 489, 491 (Tex.1988); *Reddix v. Eaton Corporation*, 662 S.W.2d 720, 724 (Tex.Civ.App.—San Antonio 1983, writ ref'd n.r.e.).

Section 16.009 of the Texas Civil Practice and Remedies Code provides:

(a) A claimant must bring suit for damages for a claim listed in subsection (b) against a person who constructs or repairs an improvement to real property not later than ten (10) years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement.

(b) This section applies to suit for: (1) injury, damage, or loss to real or personal property.

Tex.Civ.Prac. & Rem.Code section 16.009 (Vernon 1986).

 The term improvement comprehends all additions to the freehold, except trade fixtures which can be removed without injury to the building. *Nine Hundred Main, Inc. v. City of Houston*, 150 S.W.2d 468 (Tex.Civ.App.—Galveston 1941, dism'd judgmt cor.). The term "improvement" has been defined in case law as having broader signification than "fixture" and constitutes all additions and betterments to the freehold. *Cantrell v. Broadnax*, 306 S.W.2d 429, 432 (Tex.Civ.App.—Dallas 1957, no writ); *Dubin v. Carrier Corp.*, 731 S.W.2d 651, 653 (Tex.App.—Houston [1st Dist.] 1987, no writ). An automatic garage door opener in a residential building was found to be an improvement as a matter of law within the meaning of Tex.Civ. Prac. & Rem.Code Ann. section 16.009 (Vernon 1986). *Albin v. Morton Southwest Co.*, 802 S.W.2d 788 (Tex.App.—San Antonio 1990, writ denied). A heater-air conditioner was also determined to be an improvement within the purview of section 16.009 of the Tex.Civ.Prac. & Rem.Code

Ann. *Rodarte v. Carrier Corp.*, 786 S.W.2d 94 (Tex.App.—El Paso 1990, writ dism'd by agr.). A wall heater constituted an improvement to real property because in contemplation of law, it was annexed to the soil. *Dubin v. Carrier Corp.*, 731 S.W.2d 651, 653 (Tex.App.—Houston [1st Dist.] 1987, no writ). Furthermore, it was determined that an elevator in a multi-storied building was an improvement. *Ellerbe v. Otis Elevator Co.*, 618 S.W.2d 870 (Tex. Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), appeal dismissed, 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 39 (1982).

Big West argues that section 16.009 of the Tex.Civ.Prac. & Rem.Code does not apply to Willborn because the tanks are component parts of an entire underground petroleum products storage system. Outdoor elevator component parts manufacturers, consisting of electric hoist manufacturer and hoist link chain manufacturer, were denied protection of an applicable statute of limitations because they were materialmen who did no more than manufacture or supply materials. *Reddix v. Eaton Corp.*, 662 S.W.2d 720 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). In *Conkle v. Builders Concrete Prod. Mfg. Co.*, 749 S.W.2d 489 (Tex.1988), the parents of a worker who was killed brought action against the worker's employer and manufacturer of machinery for damages resulting from death. The manufacturer did not construct the mixer apparatus which joined with the bins and hoppers to form a concrete batch plant. It was determined that summary judgment evidence raised an issue of fact regarding whether the machinery was in fact an improvement to real property and whether the manufacturer constructed the entire unit or component parts only.

The factual situations of *Reddix* and *Conkle* are markedly different from the facts of the current case. A hoist link chain is clearly a component part. In *Conkle*, the concrete batch plant was portable and thus, a fact issue was created as to whether the machinery was an improvement to real property. *Rodarte v. Carrier*

*Corp.,* 786 S.W.2d 94 (Tex.App.—El Paso 1990, writ dism'd by agr.).

 The underground storage tanks at issue in the present case were buried underground. The underground storage tanks were not portable. An underground storage tank is more a part of the freehold than an above ground building because it is more permanently attached to the real estate. The underground storage tanks under the facts of the current case are improvements as a matter of law and hence, the statute of limitations applies to Willborn. Since the question under this record is one of law, Baker's description of the tanks as component parts does not raise a fact issue precluding summary judgment.

 Big West also argues that the tanks are not improvements because they did not permanently enhance the value of real property, citing *County of Nueces v. Salley,* 348 S.W.2d 397, 400 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.). Permanent improvements are defined as something done or put on the land which the occupant cannot remove or carry away with him, either because it has become physically impossible to separate it from the land, or because, in contemplation of law, it has been annexed to the soil and is therefore to be considered part of the freehold. *Id.* at 400. Because the tanks were buried underground they were annexed to the soil and thus, part of the freehold. The underground storage tanks at issue in the present case meet the definition of permanent improvement.

Although underground storage tanks are not meant to be left underground indefinitely according to Adams, other items which have a limited life expectancy have been held as a matter of law to be improvements. Wall heaters, automatic garage door openers, elevators, a classroom door and a heater-air conditioner have all been determined to be improvements as a matter of law, though they will not last indefinitely. Point of error one is overruled.

 In their second point of error, Big West contends the trial court erred in failing to take judicial notice of certain federal regulations. We disagree. Chapter one of Section 280.20 of 40 Code of Federal Regulations defines an "UST system" as an underground storage tank, connected underground piping, underground ancillary equipment, and containment system, if any. An underground storage tank is defined under the federal regulations as any one or combination of tanks (including underground pipes connected thereto) that is used to contain an accumulation of regulated substances. The federal regulations are not persuasive in determining whether underground storage tanks are an improvement under the Texas statute of limitations. *Cf. Woodard v. Texas Dept. of Human Resources,* 573 S.W.2d 596, 598 (Tex. Civ.App.—Amarillo 1978, writ ref'd n.r.e.). Point of error two is overruled.

Accordingly, the judgment is affirmed.