John G. SONNIER and Hope
Sonnier, Appellants,

v.

CHISHOLM–RYDER COMPANY, INC.,
Unipunch Products, Inc., 3800 Highland,
Inc. and Premax Limited Partnership of
Niagara Falls, Appellees.

No. 95–0206.

Supreme Court of Texas.

Argued May 11, 1995.

Decided July 7, 1995.

Rehearing Overruled Oct. 5, 1995.

Clinard J. Hanby, The Woodlands, Kurt Arbuckle, Houston, for appellants.

Derral K. Sperry, John D. Wittenmyer, for appellees.

ENOCH, Justice, delivered the opinion of the Court, in which HIGHTOWER, CORNYN, GAMMAGE and SPECTOR, Justices, join.

In 1969, the Texas Legislature enacted a statute of repose that protects registered or licensed architects and engineers from liabili-

ty in suits filed more than ten years after the substantial completion of improvements to real property or the commencement of operations of equipment attached to real property. Act of May 27, 1969, 61st Leg., R.S., ch. 418, § 1, 1969 Tex.Gen.Laws 1379 (codified as TEX.REV.CIV.STAT.ANN. art. 5536a (1969)) (amended 1985) (current version at TEX.CIV. PRAC. & REM.CODE § 16.008). The Legislature amended this statute in 1975 to extend repose protection to persons who construct or repair improvements to real property. Act of May 14, 1975, 64th Leg., R.S., ch. 269, § 1, 1975 Tex.Gen.Laws 649 (codified as TEX. REV.CIV.STAT.ANN. art. 5536a § 2 (1975)) (amended 1985) (current version at TEX.CIV. PRAC. & REM.CODE § 16.009). We are asked by certified question from the United States Court of Appeals for the Fifth Circuit whether the manufacturer of a tomato chopper that was installed in a cannery and twenty years later removed and reinstalled in another cannery is protected under the statute of repose in section 16.009. We conclude that the manufacturer does not receive repose protection under section 16.009.

### I.

In February 1965, Chisholm–Ryder Co., Inc. (Chisholm)[1] manufactured a tomato chopper for use in a commercial cannery on the premises of the Sugar Land Central Unit of the Texas Department of Corrections. The machine weighed approximately 1,200 pounds, was bolted to the ground to prevent vibration, and was powered by electrical wires housed in conduit attached to the walls. In 1985, the Sugar Land Central Unit ceased its tomato processing operations, and the Texas Department of Corrections moved the machine to the Ramsey Unit where the machine was installed in the same manner as part of a different production line. In 1990, John G. Sonnier, a supervisory employee at the Ramsey Unit, had a portion of his arm severed while inspecting the machine. The Sonniers brought a diversity action in federal court for damages against Chisholm. Chis-

holm defended, claiming that the suit was barred by the statute of repose found in section 16.009 of the Texas Civil Practice and Remedies Code. TEX.CIV.PRAC. & REM.CODE § 16.009. Both parties moved for judgment as a matter of law, and both motions were overruled. The trial court held a jury trial exclusively on the statute of repose defense. The jury found that the tomato chopper was an "improvement to real property at the Central Sugarland Unit." On the basis of that finding, the district court entered judgment that the plaintiffs take nothing.

On appeal, the United States Court of Appeals for the Fifth Circuit certified the following question to this Court:

> Whether a person or entity that manufactures a tomato chopping machine "constructs ... an improvement to real property" for the purpose of qualifying for the protection of the Statute of Repose. Tex. Civ.Pract.[sic] & Rem.Code § 16.009 when that machine is originally installed by another party on real estate, then removed and reinstalled by such other party on real estate at a different location.

47 F.3d at 134 (ellipses in original).

### II.

At the outset, we recognize the question comes to us without a unanimous vote of the Fifth Circuit panel. The dissent from the certification argued that the question of Texas law is settled, citing *Dedmon v. Stewart–Warner Corp.*, 950 F.2d 244, 249 (5th Cir. 1992), and that the certification was unnecessary. To the contrary, the majority of the panel apparently believed the law of the State of Texas is not settled on the issue, thus the question was certified to us. Due to this disagreement, we believe a brief comment is necessary.

We welcome the opportunity to respond to certified questions from the federal courts and give deference to the requests brought to us. We recognize that certification "helps build a cooperative judicial federalism," *Leh-*

---

1. Chisholm–Ryder changed its name to 3800 Highland, Inc. That company later dissolved, and most of its liabilities were assumed by Premax Limited Partnership. Although Premax contests whether it assumed the potential liabili-

ty in this case, the federal district court did not address that issue. Nor need we, given the limited nature of the certified question before us. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 349 (Tex.1990).

*man Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974), and helps avoid inconsistency between the decisions of federal and state courts on issues of state law.

We accepted the certified question in this case because only our intermediate appellate courts have had the occasion to interpret the statute with the benefit of both briefing and oral argument. And this Court's one opinion on the substance of the statute, *Conkle v. Builders Concrete Products Mfg.,* 749 S.W.2d 489 (Tex.1988), a per curiam opinion, decided without the benefit of oral argument, provides no analysis of the statute, but turns on the decisions of two lower appellate courts. We also note that *Conkle*'s discussion of section 16.009 has been subjected to thoughtful criticism by a court of appeals, *see Williams v. U.S. Natural Resources, Inc.,* 865 S.W.2d 203, 207–08 (Tex.App.—Waco 1993, no writ) (questioning this Court's opinion in *Conkle* ), by federal district courts, *e.g., Dayton Indep. Sch. Dist. v. U.S. Mineral Products Co.,* 789 F.Supp. 819, 821 (E.D.Tex. 1992) (reviewing *Dedmon* and urging the Fifth Circuit to consider the legislative history of section 16.009, and suggesting that this Court has approved an interpretation focusing on protecting construction industry professionals), by a panel of the Fifth Circuit, *see Dedmon,* 950 F.2d at 249 (recognizing that although the statute appears to protect those in the construction industry, *Conkle* may suggest the contrary), and in the academic community, *see* Shannon, *The Reach for Repose: Have the Texas Courts Gone Awry?,* 24 Tex.Tech L.Rev. 196, 206–13 (1993) (arguing that *Conkle* is subject to various interpretations). It is not a stretch to conclude that *Dedmon,* in fact, sent this Court a signal that Texas jurisprudence on section 16.009 was not well considered and that our sole opinion has not correctly construed the statute. *See Dedmon,* 950 F.2d at 250 (suggesting that the legislative history should lead to a result contrary to the one advanced by Texas intermediate courts of appeals, and stating that at most, *Conkle* only tacitly resolved the issue). *Williams,* the most recent court of appeals case on the issue, buttressed this conclusion. We accepted the certified question pursuant to Texas

Rule of Appellate Procedure 114 to resolve the controversy regarding the correct construction of this statute.

### III.

We address the question by breaking it down into two subquestions: 1) whether a manufacturer of personalty which becomes an improvement to real property "constructs" an "improvement to real property;" and 2) when personalty is installed and used on one piece of land for over ten years, and then is removed and reinstalled on another property by the initial purchaser, whether the ten-year repose period starts again upon the substantial completion of the personalty's reinstallation.

We begin our analysis by reviewing the language in the statutes of repose. Section 16.008 states in pertinent part as follows:

> (a) A person must bring suit for damages for [personal injury and other injuries] against a registered or licensed architect or engineer in this state, who designs, plans, or inspects the construction of an improvement to real property or equipment attached to real property, not later than 10 years after the substantial completion of the improvement or the beginning of operation of the equipment in an action arising out of a defective or unsafe condition of the real property, the improvement, or the equipment.

Tex.Civ.Prac. & Rem.Code § 16.008. The language in section 16.009 is similar, but differs in a material respect from the preceding section. Section 16.009 reads:

> (a) A claimant must bring suit for damages for [personal injury and other injuries] against a person who constructs or repairs an improvement to real property not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement.

*Id.* § 16.009. Both statutes provide protection to those in the construction industry, but their applications differ.

The sections differ in who they protect and the object of the work protected. Section 16.008 protects registered or licensed architects or engineers, while 16.009 protects a person who constructs or repairs, and section 16.008 protects those inspecting improvements to real property *or* equipment attached to real property, while 16.009 only protects those who construct or repair improvements to real property.

## IV.

■ The Sonniers argue that Chisholm did not "construct" an "improvement to real property," but instead merely manufactured a product that another party moved and attached to the realty. As such, the Sonniers argue that Chisholm is not entitled to the protection afforded by the statute of repose. Whether the statute of repose applies to those who do no more than manufacture personalty that is subsequently attached as improvements to real property is a question of first impression for this Court. We find merit in the Sonniers' argument and agree that the statute of repose was not intended to grant repose to manufacturers in product liability suits but only to preclude suits against those in the construction industry that annex personalty to realty.

■ An improvement includes all additions to the freehold except for trade fixtures which can be removed without injury to the property. Generally, whether an attachment of personalty to realty constitutes an improvement is a question of the owner's intent. This Court's opinion in *Logan v. Mullis*, 686 S.W.2d 605, 607 (Tex.1985), is frequently cited for its discussion of the three factors to be considered to ascertain whether personalty has become permanently attached to the realty: 1) the mode and sufficiency of annexation, either real or constructive; 2) the adaptation of the personalty to the use or the purpose of the realty, and 3) the intention of the owner who causes the personalty to be annexed to the realty. The third factor is preeminent and the other two are evidence of intent. *Id.* The owner's intent is critical because personalty does not constitute an improvement until it is annexed to realty. To constitute an improvement there must be a joinder of personalty with realty. It is critical to distinguish among the three concepts involved in determining whether an object is an improvement—the personalty, the realty to which the personalty is annexed, and the result, the improvement. There can be no improvement without annexation to realty, and until personalty is annexed to realty, it by definition cannot be an improvement. · Only upon annexation does the personalty lose its characteristics as personal property and become viewed as an improvement. The plain language of the statute applies to those who construct or repair improvements—the statute applies to those who start with personalty and transform the personalty into an improvement.

Early appellate decisions construing this statute have created confusion by failing to grasp the significance of the different elements that combine to create an improvement. The confusion stems from focusing on the personalty as attached to realty without reference to the fact that it is the *annexation* that transforms the personalty into an improvement. For example, the court of appeals in *Ellerbe v. Otis Elevator Co.*, 618 S.W.2d 870 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), applied the statute in favor of an elevator manufacturer, reasoning that: "An elevator in a multi-storied building obviously constitutes an improvement on real property. The manufacturer of the elevator would be a person performing or furnishing construction of the elevator even though it did not install it in the building." 618 S.W.2d at 872. Although it is true that an elevator installed in a building constitutes an improvement, such a fact does not lead to the conclusion that the manufacturer of the elevator alone constructed an improvement—personalty annexed to real property.

The next case to address this issue was *Reddix v. Eaton Corp.*, 662 S.W.2d 720 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.). In that case, Eaton manufactured an electric hoist that operated an outdoor elevator. The court concluded that materialmen "who [do] no more than manufacture ... materials [do] not benefit from the statute [of repose]." *Id.* at 724. It then held that the hoist was a

mere component of the elevator and, thus, the manufacturer of a "fully assembled" hoist was not a beneficiary of the repose statute. *Reddix* correctly held that under the statutory language, a materialman who does no more than manufacture or supply materials does not benefit from the statute. But its reasoning adopted the convoluted view of improvements announced in *Ellerbe*. In short, the *Reddix* court did not find repose was required under *Ellerbe* because the hoist was only a component of an elevator and not a complete improvement in itself. By failing to look at an improvement as personalty annexed to realty and failing to determine who actually constructed the improvement, *Reddix* tacitly approved the incorrect holding in *Ellerbe* that off-site manufacturers of personalty later annexed to real property as improvements are protected by the statute.

■ The holding in *Reddix* was a turning point in the analysis of section 16.009 because of its citation to *Ellerbe* and its discussion of materialmen. *Reddix* has been understood as holding that even though a materialman who merely supplies parts is not protected, one who supplies an entire product is protected. A correct application of the statute, however, holds that those who are not connected with the construction, whether they supply a component or an entire product, are merely materialmen because they perform no work or labor in constructing an improvement—annexing personalty to real property. *See Huddleston v. Nislar*, 72 S.W.2d 959, 962 (Tex.Civ.App.—Amarillo 1934, writ ref'd).

Next came *Dubin v. Carrier Corp.*, 731 S.W.2d 651 (Tex.App.—Houston [1st Dist.] 1987), *after remand*, 798 S.W.2d 1 (Tex. App.—Houston [14th Dist.] 1990, writ dism'd by agr.). Here the trial court initially granted summary judgment for the manufacturer of a heating unit because of the repose statute. On the first appeal, the appellate court, concluding that the heater was an improvement, stated that section 16.009 required proof that a heater was installed more than ten years before the accident occurred. The summary judgment was reversed because there was no evidence that the heater was installed more than ten years before the injury. In so holding, the court relied upon

*Ellerbe*'s statement that a manufacturer is protected notwithstanding the fact that it did not install the product. The court of appeals then remanded the case to the trial court. The parties did not appeal to this Court. On remand, the trial court again granted summary judgment to the manufacturer. In reviewing this disposition, the court of appeals, again following the dubious distinction drawn in *Ellerbe*, held that the manufacturer "both made a portion of the unit and also manufactured the entire assembly" and affirmed the summary judgment.

Finally, in *Ablin v. Morton Southwest Co.*, 802 S.W.2d 788 (Tex.App.—San Antonio 1990, writ denied), the court held that a garage door opener was an improvement and was affixed more than ten years before the injury. The plaintiffs argued that the opener was not an improvement because it was easily removable. *Ablin* cited *Logan* and held that the evidence demonstrated that the opener was an improvement as a matter of law.

This Court's only opinion on the substance of section 16.009 is *Conkle*. In *Conkle*, the plaintiff was killed in a concrete batch plant. The defendant manufacturer received summary judgment under section 16.009, and the court of appeals affirmed in an unpublished opinion. This Court reversed, holding that two fact issues precluded summary judgment. First, we held that fact issues existed as to whether the defendant only manufactured component parts. Second, summary judgment was improper because there was a factual dispute as to whether the plant was actually an improvement in the first instance given evidence that the plant was portable. In *Conkle*, the petitioner, who presumably followed the jurisprudence as espoused by the courts of appeals, only argued that the defendant was a mere materialman who did no more than construct component parts of a cement batching plant.

*Conkle* and the other cases addressing section 16.009 assumed without questioning the propriety of extending repose protection to off-site manufacturers, and focused instead on the issue evolving out of *Reddix*—whether a complete system had been built as opposed to only part of a system. The writs of error

in all other cases that discussed off-site manufacturers have either been dismissed by agreement, *see Rodarte v. Carrier Corp.,* 786 S.W.2d 94 (Tex.App.—El Paso 1990, writ dism'd by agr.); *see also Dubin II,* 798 S.W.2d at 1; or were not filed, *Karisch v. Allied–Signal, Inc.,* 837 S.W.2d 679 (Tex. App.—Corpus Christi 1992, no writ); *Big West Oil Co. v. Willborn Bros. Co.,* 836 S.W.2d 800 (Tex.App.—Amarillo 1992, no writ). Thus, this certified question is the first occasion for us to squarely address this issue.

We have found no authority that identifies a class of property as an improvement although not annexed to real estate. Neither have we found authority that states a component part, although annexed to realty, retains its character as personalty because it is merely a component of a larger system.

Exclusive focus on the distinction between a component part and a total system has resulted in a confused body of law leading to irreconcilable applications. *Reddix* held that a manufacturer of a motor that raises an elevator is not protected and is no more than a materialman. 662 S.W.2d at 723. *Ablin,* on the other hand, held that a manufacturer of a motor that raises a garage door is protected. 802 S.W.2d at 792. *Dedmon,* in deciding that a heater is an improvement, noted that a creative attorney could argue that anything is a part of its own system as opposed to a component of a larger system. 950 F.2d at 248. And the court in *Barnes v. Westinghouse Elec. Corp.,* 962 F.2d 513, 517 n. 13 (5th Cir.1992), gave life to this idea when it held that an electrical duct is its own system and is not a component. One cannot effectively argue that a fully functioning hoist is any more or less a component part of an elevator than a garage door opener is more or less a component part of a garage door, or an electrical duct is any more or less a component part of an electrical system, or that a tomato chopper is any more or less a component part of a cannery.

Although there are a number of court of appeals opinions that have followed this distinction, the distinction between the manufacturer of a component and an entire system has skewed the focus of the rule and does

violence to the concept of "improvement" and thus, to the plain language of the statute.

These opinions cut against the concept of improvement because they assume that personalty can exist as an improvement without attachment to real property. Such a conclusion is inconsistent with the requirement that property be annexed to realty with the intent that it be a permanent addition to the realty. There can be no such thing as an improvement until personalty is annexed to realty. Whatever it is that a manufacturer actually makes, it is not an improvement until it is annexed.

■ These opinions, therefore, are contrary to the plain language of the statute because they look at the word "construct" in connection with an incomplete understanding of "improvement." Personalty is not an improvement until annexed to realty; the manufacturer of personalty does not "construct" an improvement because there is no relationship with the annexation.

Recently, in *Williams,* 865 S.W.2d at 203, the Waco court of appeals addressed whether the statute of repose precluded suit against the manufacturer of a furnace installed in a house when the manufacturer did not actually annex the furnace to the real property. The court held that the statute of repose does not protect the manufacturer of a product who does not actually annex the product. The court questioned the reasoning of the other courts of appeals that have held that off-site manufacturers of goods purchased and installed by third parties come within the statute.

No writ of error was filed in *Williams;* consequently, we did not have the occasion to review the court's holding. Now, as we review the holding, we conclude that the reasoning was correct. We agree that the prior courts erred in holding that the construction of personalty, even as a complete system, is the equivalent of the construction of an improvement to realty. *See* Shannon, 24 TEX. TECH L.REV. at 220. Accordingly, we disapprove of the express language to the contrary in *Ellerbe* and interpretations of *Conkle* inconsistent with the analysis in *Williams.* There is no evidence that Chisholm did any-

thing more than manufacture personalty to be used by those in the construction industry. *See Huddleston,* 72 S.W.2d at 962. Thus, Chisholm did not "construct" an "improvement to realty."

 The jury in the present case found that the tomato chopper was an improvement as to the Sugar Land cannery. The determination that personalty has been transformed into an improvement is not dispositive of the *applicability* of section 16.009. For example, a motel could bolt a painting to a wall, intending that it not be removed and thus transforming the painting into an improvement. The motel's demonstrated intent does not transform the artist into one who constructs an improvement. Because the statute protects those who construct or repair improvements, the statute only protects those who annex personalty to realty, not those who manufacture personalty that is used in constructing an improvement. This reading of the statute is the only one consistent with the plain language of the statute, the legislative history, and the statutory purpose. *See* TEX.GOV'T CODE § 311.023 (in construing a statute, whether or not ambiguous, a court may consider, *inter alia,* the object sought to be obtained and the legislative history). As originally enacted, section 16.008 required that:

There shall be commenced and prosecuted within ten years after the substantial completion of any improvement to real property *or* the commencement of operation of any equipment attached to real property ... all actions or suits [for damages] against any registered or licensed engineer or architect in this state performing or furnishing the design, planning, inspection of such construction of any such improvement, equipment or structure or against any such person so performing or furnishing such design, planning, inspection of construction of any such improvement, equipment or structure.

Act of May 27, 1969, 61st Leg., R.S., ch. 418, § 1, 1969 Tex.Gen.Laws 1379 (codified as TEX.REV.CIV.STAT.ANN. art. 5536a (1969)) (amended 1985) (current version at TEX.CIV. PRAC. & REM.CODE § 16.008) (emphasis added). Thus, the statute had at its origin an intent to protect those who design improvements to realty.

Section 16.009 was intended to complement section 16.008 by providing comparable repose protection to those who constructed the improvements to realty the architects and engineers designed. The forebear to section 16.009 originally read:

There shall be commenced and prosecuted within ten years after the substantial completion of any improvement to real property, and not afterward, all actions or suits in court for [damages] arising out of the defective or unsafe condition of any such real property or any deficiency in the construction or repair of any improvements on such real property against any person performing or furnishing construction or repair of any such improvement.

Act of May 14, 1975, 64th Leg., R.S., ch. 269, § 1, 1975 Tex.Gen.Laws 649 (codified as TEX. REV.CIV.STAT.ANN. art. 5536a § 2 (1975)) (amended 1985) (current version at TEX.CIV. PRAC. & REM.CODE § 16.009).

The legislative history is silent with respect to those who manufacture personalty subsequently installed in buildings as improvements. From the history of the act, it is consistent to hold that the act was intended to protect those who actually alter the realty by constructing additions or annexing personalty to it, not to protect those who do no more than manufacture personalty that is later transformed by third parties into an improvement. This holding avoids the morass currently experienced by the state's jurisprudence and alluded to by the *Dedmon* court:

We find the "improvement versus component part" distinction difficult to apply because, if only systems can be improvements, there is no principled way to tell whether an item is a system or a part of one. Arguably, the ducts that convey warm air from the heater throughout the dwelling are part of the attic system, rather than the heating system. Or if, as in this case, they convey chilled as well as heated air, it is fair to say that the ducts themselves are an "air-moving system" to

which two "air temperature modification systems" attach.

*Dedmon,* 950 F.2d at 248.

The record before us indicates only that Chisholm manufactured personalty and sold it to the Department of Corrections. Absent any evidence that Chisholm did more, we conclude that Chisholm did not construct an "improvement to real property" as contemplated by section 16.009.

## V.

The Sonniers ask us to consider, and the question certified to us to answer is, assuming the tomato chopper is an improvement, whether its detachment from the real property at the Sugar Land Unit and reannexation at the Ramsey Unit revivifies the ten-year statute of repose as to the manufacturer of the tomato chopper. It should be apparent from the analysis above that the answer is no. In fact, it should be apparent that this question does not arise under our analysis of the statute of repose because the question assumes the manufacturer constructed an improvement without any relation to the annexation.

■ The jury in this case answered that the tomato chopper was an improvement at the Sugar Land Unit. Clearly the ten-year statute of repose has run with respect to

those who constructed that improvement. Whether the tomato chopper was an improvement at Sugar Land depended upon the facts surrounding its annexation to Sugar Land. The statute of repose governing the annexation at Sugar Land is not revivified by any activity occurring at another construction site. The subsequent annexation at Ramsey created a new ten-year repose period protecting those who annexed the personalty to the realty there, assuming the facts support a finding that the chopper was an improvement at Ramsey.

\* \* \* \* \* \*

Chisholm is only the manufacturer of personalty. As such it cannot claim the protection of section 16.009 of the Texas Civil Practice and Remedies Code because it did not "construct . . . an improvement to real property." Texas court of appeals decisions are disapproved and *Conkle* is overruled to the extent they hold that an off-site manufacturer of personalty used in the construction of an improvement may claim the protection of section 16.009.[2]

Dissenting opinion by OWEN, Justice in which PHILLIPS, Chief Justice, and GONZALEZ, and HECHT, Justices, join.

I respectfully dissent.

2. In response to the dissent, a few remarks are appropriate. First, notwithstanding the dissent's reference to *stare decisis,* a cursory reading of the dissent demonstrates that this Court is unanimous in questioning the jurisprudential value of *Conkle* and the court of appeals' decisions discussed above.

This is so because both this Court and the dissent disapprove of the notion that whether a manufacturer makes only a component part or the whole thing is dispositive of any issue under section 16.009. The dissent's test for improvement would place great importance on whether the manufacturer of the product intended the product to become an improvement or whether it was reasonable for the manufacturer to expect its product would become an improvement at the time the product was manufactured. Under this test, it is irrelevant whether the manufacturer made a component part or the whole part. And since *Conkle* supports the proposition that only manufacturers of whole systems receive the benefit of the repose statute, the dissent silently disavows that portion of the opinion.

Second, although it asserts that this Court has disregarded settled jurisprudence, the dissent's proposed test is clearly inconsistent with the principles espoused by earlier court of appeals decisions, both those interpreting section 16.009 and those determining whether property is an improvement. Not in *Ellerbe* nor in *Reddix* did the court consider the intent of the manufacturer. *Reddix,* which commented on the distinction between a whole product as opposed to a part, surely is deserving of disapproval even by the dissent—the manufacturer of a part may equally intend its product to be an improvement.

Finally, the dissent's test is significantly more broad than any holding in this area so far. Despite its protests to the contrary, the dissent's test encompasses all materialmen—all suppliers of any kind—in the context of the statute of repose. For example, a manufacturer of concrete reinforcing bars certainly intends for its products to be improvements. Under the dissent's test, the manufacturer would be afforded repose. Arguably even suppliers of raw materials would be covered by the repose statute to the extent their labor contributed to the refining or extracting of the materials. The statute does not go that far.

I do not agree with the Court's conclusion that the manufacturer of a tomato chopper to be installed in a cannery is excluded from the scope of section 16.009 by virtue of the fact that the manufacturer did not also perform the installation. There is no such limitation in the statute. Chisholm–Ryder Company, Inc. constructed the tomato chopper. If the tomato chopper was an improvement to real property, Chisholm–Ryder comes within the purview of section 16.009. On the record before us, the question of whether the tomato chopper was an improvement is at least one of fact. The jury resolved this issue adversely to the Sonniers.

### I.

The underlying facts are largely undisputed. For many years, the Texas Department of Corrections operated a canning plant at its facility in Sugar Land, Texas. In 1965, the TDC ordered a tomato chopping unit from Chisholm–Ryder. The unit was then manufactured in its entirety by Chisholm–Ryder. However, Chisholm–Ryder did not install the tomato chopper.

The tomato chopper weighs approximately 1200 pounds and was bolted to the floor of the Sugar Land cannery. It was connected to the next phase of the cannery process by steel piping which was anchored to the floor with bolts. The tomato chopper was powered by electrical lines enclosed in a rigid conduit attached to the side of the building, and to the floor, walls, and ceiling. The tomato chopper was controlled by a master switch at a main breaker panel connected to the chopper by another conduit. It had the capacity to chop ten to twelve tons of tomatoes per hour. In 1985, the tomato chopping unit was moved to the TDC's Ramsey III Unit, where it was similarly installed. There was testimony from a representative of the TDC that if the TDC were to cease making tomato puree, it would sell the tomato chopper separately from the real estate.

John Sonnier, an employee of the TDC, lost his hand and a portion of his arm in 1990 while inspecting the tomato chopper at the Ramsey III Unit. Suit ensued in federal district court in which the jury found the tomato chopper was an improvement to the real property at the Sugar Land facility. The Sonniers have appealed an adverse judgment, and the United States Court of Appeals for the Fifth Circuit has certified the following question to us:

Whether a person or entity that manufactures a tomato chopping machine "constructs ... an improvement to real property" for the purpose of qualifying for the protection of the Statute of Repose, Tex. Civ.Pract. & Rem.Code § 16.009 when that machine is originally installed by another party on real estate, then removed and reinstalled by such other party on real estate at a different location.

### II.

The Court has applied an inappropriate test in determining whether the tomato chopper is an improvement, and accordingly, whether Chisholm–Ryder can be the manufacturer of an improvement. The Court concludes that the chopper was "personalty" at the time it was made, and therefore, Chisholm–Ryder could never be the constructor of an improvement under section 16.009 unless Chisholm–Ryder installed the "personalty." The Court has borrowed the law applicable to fixtures and rigidly applied it to the term "improvement" in section 16.009. Such a construction does not give effect to the plain meaning of the statute.

The inquiry should be what the parties objectively intended at the time the item or product in question was constructed. The principle consistently running throughout our case law, prior to today, has been that section 16.009 applies where the object or product was intended to become a part of real property at the time it was made. There is a fundamental distinction between items of this nature, such as an elevator or a furnace, and items of "personalty" such as a tank car or a painting. It is virtually incontrovertible that at the time a manufacturer makes an elevator or a furnace, it is contemplated that these items will become an integral part of a building. The examples of "personalty" relied upon by the Court to validate its rationale, the tank car in the case of *Logan v. Mullis*, 686 S.W.2d 605 (Tex.1985), and a painting bolted to a motel wall in the Court's hypo-

thetical, are not analogous. It cannot be said that at the time these items were manufactured, they were intended to become improvements to real property within the meaning of section 16.009.

I agree with the Court that until an elevator or furnace or a comparable item becomes a part of real property, it is not an improvement. But once sufficiently annexed, the question raised under section 16.009 is did the manufacturer *construct* an improvement? The Court myopically and incorrectly focuses on the fact that at one point in the progression of events, the object was not attached to real property.

The Court grants repose only to contractors, builders, and repairmen. It does not and cannot answer the question of why the Legislature used much broader terms in the statute: "a person who constructs or repairs an improvement." Where the Legislature intended to single out specific trades or professions in statutes of repose, it has done so. *Accord Dedmon v. Stewart–Warner Corp.,* 950 F.2d 244, 246 (5th Cir.1992). In section 16.008, the Legislature extended protection only to "a registered or licensed architect or engineer." TEX.CIV.PRAC. & REM.CODE § 16.008. The Court's holding today is at odds with the statute it construes.

### III.

In reaching its conclusion that the tomato chopper at issue does not fall within the ambit of section 16.009 of the Texas Civil Practice and Remedies Code as a matter of law, the Court overrules the holding of one of our prior decisions and disapproves of no fewer than seven decisions of the courts of appeals. *Conkle v. Builders Concrete Prods. Mfg. Co.,* 749 S.W.2d 489 (Tex.1988); *Karisch v. Allied–Signal, Inc.,* 837 S.W.2d 679 (Tex.App.—Corpus Christi 1992, no writ); *Big West Oil Co. v. Willborn Bros. Co.,* 836 S.W.2d 800 (Tex.App.—Amarillo 1992, no writ); *Ablin v. Morton Southwest Co.,* 802

S.W.2d 788 (Tex.App.—San Antonio 1990, writ denied); *Dubin v. Carrier Corp.,* 798 S.W.2d 1 (Tex.App.—Houston [14th Dist.] 1989, writ dism'd by agr.); *Rodarte v. Carrier Corp.,* 786 S.W.2d 94 (Tex.App.—El Paso 1990, writ dism'd by agr.); *Dubin v. Carrier Corp.,* 731 S.W.2d 651 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Ellerbe v. Otis Elevator Co.,* 618 S.W.2d 870 (Tex.App.— Houston [1st Dist.] 1981, writ ref'd n.r.e.), *appeal dism'd,* 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 39 (1982).

There has been only one prior occasion on which this Court squarely addressed the substantive provisions of section 16.009.[1] We did so in *Conkle v. Builders Concrete Products Manufacturing Co.* The facts are strikingly similar to those presented by the certified question. The plaintiff in *Conkle* was killed when he became trapped in a bin that was part of a concrete batch plant. *Conkle,* 749 S.W.2d at 490. Dillon Steel designed and manufactured the bins and hoppers. It did not install them, and it did not manufacture or construct the mixer apparatus that was joined with them to form the concrete batch plant. *Id.* The plant originally was sold and delivered to Lok Rok Corporation and assembled on Lok Rok's property, but the entire plant was subsequently moved to the site where Douglas Conkle later lost his life. *Id.* The trial court granted summary judgment to Dillon Steel as the manufacturer of an improvement, and the court of appeals affirmed. *Id.* at 489. Our Court reversed.

Our decision in *Conkle* is significant to our inquiry here for several reasons, the most important of which is that the manufacturer did not install the bins and hoppers. The decision of the court of appeals in *Conkle* (which is unpublished) as well as the briefing in that court and in our Court show this very clearly. Contrary to the Court's holding today, the fact that the manufacturer was not the installer was not dispositive of the question of whether section 16.009 applied. We held in *Conkle* that one in Chisholm–Ryder's

---

1. Section 16.009 provides in pertinent part:
 **§ 16.009. Persons Furnishing Construction or Repair of Improvements**
 (a) A claimant must bring suit for damages ... against a person who constructs or repairs an improvement to real property not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement.
 TEX.CIV.PRAC. & REM.CODE § 16.009.

shoes may nevertheless rely on section 16.009. *See id.* at 491. The United States Court of Appeals for the Fifth Circuit relied on *Conkle* for this very proposition in *Corbally v. W.R. Grace & Co.*, 993 F.2d 492, 494 (5th Cir.1993): *"Conkle* preserved an offsite manufacturer's repose, but only if the manufacturer 'constructs the entire improvement and not a component part of it.'"

The Court attempts to undermine our prior holding by asserting that the writ of error before us in *Conkle* "assumed without questioning the propriety of extending repose protection to off-site manufacturers." This is incorrect. One of the specific points before us was spelled out in the court of appeals' decision under review. That court held:

> Dillon argues that the question to be answered is whether or not the manufacturer of the improvement must actually erect or install the improvement to benefit from the statute as the person who "constructs or repairs improvements to real property." We agree with Dillon's analysis. We find the question has been answered. A manufacturer of a product is the one who performs or furnishes construction even though it does not install the item.

Slip op. at 18 (relying on *Ellerbe v. Otis Elevator Co.*, 618 S.W.2d 870, 872 (Tex.Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), *appeal dism'd*, 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 39 (1982)).[2]

In our decision in *Conkle*, we discussed *Ellerbe v. Otis Elevator*, noting that the court of appeals in *Conkle* relied on *Ellerbe* for the proposition that "a person who constructs an improvement to real property need only furnish construction, even though it does not install the item." *Conkle*, 749 S.W.2d at 491. If the fact that Dillon Steel had not installed the improvement were fatal to its defense, we would have so held in *Conkle*. We did not.

What we did hold was that a fact question was raised by the evidence. *Id.* Thus, not-

withstanding that Dillon Steel had not installed the bins and hoppers, an issue remained to be tried under section 16.009. (That issue was whether the bins and hoppers in which Conkle died constituted an improvement to real property and whether Dillon Steel manufactured the entire unit or only component parts.) *Id.* The Court's decision today overrules a fundamental holding in *Conkle*.

The Texas courts of appeals have similarly applied the straightforward wording of the statute. There is a long line of decisions from the courts of appeals which concludes that the protections extended by section 16.009 and its predecessor, TEX.REV.CIV.STAT. ANN. art. 5536a, § 2, do not turn on whether the one who constructs the "improvement" also installs it. *Ellerbe v. Otis Elevator Co.* was the first to so hold. Otis designed and manufactured an elevator for a multi-storied building, but did not install it. *Ellerbe*, 618 S.W.2d at 872. The court of appeals affirmed summary judgment in favor of Otis under article 5536a, § 2. *Id.* at 874.

In line with *Ellerbe*, other decisions have concluded that a manufacturer does not have to be the installer to be afforded inclusion in this statute of repose. *Big West Oil*, 836 S.W.2d at 801 (affirming summary judgment for constructor of underground storage tanks who did not install them); *Ablin*, 802 S.W.2d at 791–92 (affirming summary judgment in favor of manufacturer of garage door opener even though there was no direct evidence that the unit was actually installed by the manufacturer); *Dubin II*, 798 S.W.2d at 2 (upholding summary judgment for marketer and distributor of heater who was not the installer); *Rodarte*, 786 S.W.2d at 95 (affirming summary judgment in favor of manufacturer of heater-air conditioner who had no role in installation or servicing); *Dubin I*, 731 S.W.2d at 654 (sustaining summary judgment for designer and manufacturer of same wall heater that was subject of *Dubin II*); *see also McCulloch v. Fox & Jacobs, Inc.*, 696 S.W.2d 918, 922–23 (Tex.App.—Dallas 1985,

---

**2.** The issue was joined in the briefing in this Court. Conkle asserted: "The summary judgment evidence ... creates an issue of fact as to whether Dillon constructed an improvement on real property, or whether it merely constructed and fabricated component parts of machinery *which were erected and placed on real property by persons other than Dillon.*" (Emphasis added.) Dillon Steel responded: "The question as to whether one must actually erect or install the improvement to claim protection of the statute was answered in *Ellerbe.*"

writ ref'd n.r.e.) (summary judgment upheld in favor of owner who did not design or construct pool, but hired contractor, approved dimensions, and always intended to convey pool to Homeowners Association). *Accord Barnes v. Westinghouse Elec. Corp.,* 962 F.2d 513, 518 n. 13 (5th Cir.1992) (affirmed summary judgment for manufacturer of electrical bus duct); *Dedmon v. Stewart–Warner Corp.,* 950 F.2d 244, 247 (5th Cir. 1992) (summary judgment for manufacturer of residential furnace affirmed).

We need not pass upon whether this principle of law was correctly applied to the facts in each of these cases, but the holding that section 16.009 may apply to those who construct but do not install improvements to real property was sound. It is derived from the plain meaning of the statute: "a person who constructs ... an improvement to real property." Prior to today, only one Texas decision has reached an opposite conclusion. *Williams v. U.S. Natural Resources, Inc.,* 865 S.W.2d 203 (Tex.App.—Waco 1993, no writ) (relying in part on *Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.,* 800 F.Supp. 1430 (E.D.Tex.1992)).

Implicit in each of the cases which held that the manufacturer was entitled to repose even though it was not the installer was the conclusion that the manufacturers of petroleum storage tanks, garage door openers, elevators, air conditioners, and comparable items contemplate that their products will be attached to and become a part of real property. In deciding if something within or upon real property is an improvement within the meaning of section 16.009, the determinative factor should not be who installed it. The inquiry should include the intent of the parties at the time the item at issue was constructed, the manner in which it is used in conjunction with the property, and the manner in which it is attached or connected in some way to the real property.

The Court relies upon our decision in *Logan v. Mullis,* 686 S.W.2d 605 (Tex.1985), but applies the factors we articulated without analysis. In *Logan,* we delineated the factors used to determine whether *personal property* had become a fixture to real property. *Id.* at 607. The essence of our holding in

that case was that we must look at the broader picture and to the objective intentions of the parties to ascertain whether something is an improvement. The decision in *Logan* concerned an item of personalty that was designed to remain personalty, a railroad tank car. Accordingly, the Court looked only to the intent of the person who annexed it to realty. *Id.* If we apply the rationale of our holding in *Logan* to the facts before us today, it is obvious that the intentions and reasonable expectations of the constructor must also be considered.

The facts in *Logan* shed light on the reasoning which led to our decision. Logan acquired an easement on which he built a road. As part of that project, he built a culvert beneath the road where it intersected a creek. To accomplish this, he cut both ends off of a railroad tank car, put it in the creek bed, and covered it with gravel. *Id.* Logan had given the owners of the subservient estate the right to use this road, but he later became embroiled in a dispute with them and destroyed the culvert. *Id.* The question before us was whether Logan had the right to remove the culvert. *Id.* We set out the three factors relevant to determining "whether personalty has become a fixture, that is, a permanent part of the realty to which it is affixed":

(1) the mode and sufficiency of annexation, either real or constructive;

(2) the adaptation of the article to the use or purpose of the realty; and

(3) the intention of the party who annexed the chattel to the realty.

*Id.*

We explained that the third criterion dealing with intent is preeminent, while the first and second criteria constitute evidence of intention. *Id.* In determining intent, *Logan* also instructs that we are to look at objective manifestations. *Id.* at 608. While as a general rule, intent is a question of fact, even testimony that the personalty was not meant to become a fixture will not prevail in the face of undisputed evidence to the contrary. "Where reasonable minds cannot differ, the issue is one of law rather than one of fact." *Id.*

We held in *Logan* that the intention to make the tank car a fixture was conclusively established by Logan's conduct at the time he built the culvert. "The manner in which he affixed the tank car to the realty, the circumstances surrounding the building and eventual destruction of the culvert, and the adaptability of the culvert to the peculiar topography of the land are all prime evidence of intention." *Id.* We held as a matter of law that the culvert was a fixture. *Id.* at 609.

*Logan* was not a case construing section 16.009, but the principles it set out are instructive in determining the meaning of "improvement" as used in that statute. Those principles are not, however, the only factors to be considered in determining whether something is an *improvement* to real property within the meaning of section 16.009.

The inquiry in this case should be whether Chisholm–Ryder constructed an improvement. In other words, was it reasonable for Chisholm–Ryder to expect that its product would become a part of real property? This concept runs throughout our prior case law, although it has not been articulated in these exact words.

IV.

Admittedly, the Legislature did not give us precise guidelines for determining the outermost reach of section 16.009. However, the language of the statute cannot be read to exclude automatically those who do not construct the improvement on the job site. Most of the difficulty in the case law has been encountered in attempting to parse whether the item manufactured is an improvement or a component part of an improvement. *See, e.g., Reddix v. Eaton Corp.,* 662 S.W.2d 720, 724 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.).

I agree with the observation of the Court and of the Fifth Circuit that the distinction drawn in *Reddix* and *Conkle* between an improvement versus a component part can be difficult to apply. I would articulate the distinction between what is and is not included under section 16.009 somewhat differently. Those who only supply materials, such as nuts, bolts, nails, concrete, or lumber, are not included. They do not "construct" an improvement, but merely provide materials. But where "construction" must take place, such as the construction of an elevator or oil storage tanks, the manufacturer is included within the scope of section 16.009 if its product does in fact become a part of real property and if it was the objective intent of the parties at the time the item was constructed that it would become an improvement.

Articulating the test for the application of section 16.009 in this manner does no violence to *Conkle, Ablin,* or *Ellerbe,* as the Court suggests. A fact question would remain under *Conkle* as to whether the bins and hoppers were an improvement. *See Conkle,* 749 S.W.2d at 491. The garage door opener in *Ablin* and the elevator in *Ellerbe* would fall within the scope of section 16.009 as a matter of law. *See Ablin,* 802 S.W.2d at 791–92; *Ellerbe,* 618 S.W.2d at 872. Only the result in *Reddix* was and is questionable, regardless of whether the test for the application of repose under section 16.009 is stated in terms of component parts versus an improvement, or in terms of whether the item was constructed with the view that it would become an improvement to real property. *See Reddix,* 662 S.W.2d at 722–24. In some cases, such as this one involving the tomato chopper, reasonable minds may differ as to what is an improvement, and a fact question is presented.

Aside from the "component parts" distinction, a few courts also have struggled with the concept of whether the reach of the statute includes manufacturers and suppliers of standardized goods such as garage door openers. *Williams,* 865 S.W.2d at 205–06; *Dedmon,* 950 F.2d at 249–50; *Dayton,* 800 F.Supp. at 1436–39. These decisions have considered whether the statute confines repose to those persons who supply individual expertise not susceptible of the quality control standards of a factory. The *Dedmon* decision attempted to answer that question and to determine if the Texas Legislature intended to focus on the actor or on the product in section 16.009. The court in *Dedmon* observed:

We suspect that the Texas Legislature intended the repose statute to protect a specific class of economic actors—construc-

tion-industry professionals who perform certain functions. But the broad wording of the statute blurs the intended boundaries of that class.

950 F.2d at 249. The Fifth Circuit ultimately concluded, based on *Conkle*, that our Court had adopted a product-oriented approach. *Id.* at 250.

While the Fifth Circuit found the boundaries blurred when determining what products should be deemed improvements when attached to realty, the court had no difficulty in concluding that the scope of section 16.009 is *not* dependent on whether the improvement was actually installed by the one who manufactured it. Judge Reavley, writing for the court, observed:

> The statute's plain words protect any person who "constructs ... an improvement to real property," and do not distinguish whether the person constructs the improvement on the premises, or off of the premises for later installation by another.

*Id.* at 247.

The question of whether the Legislature intended to extend repose to manufacturers of mass-produced products, even if the products were intended to become and did become an improvement to real estate, must similarly be resolved by applying the straight-forward meaning of the words in the statute. The statute draws no distinction between an improvement that is mass-produced and one that is specifically tailored for a given piece of real property.

The intent of a statute of repose is to provide some ending point for the assertion of claims. The Legislature deemed repose appropriate and in the public interest for certain suits involving an improvement to real property. The basic policy considerations underpinning a statute of repose exist for both a manufacturer of a tomato chopper and a general contractor. Those policy considerations may not be coextensive; there may be additional factors weighing in favor of repose for one class of constructor as opposed to another. But that does not mean that repose is unavailable, as a matter of law or principle, to either class of constructor. The determining factor is what the Legisla-

ture has put in place. We must be guided by the statute itself.

The Court today rejects the interpretation of section 16.009 previously adhered to by this and other courts. In so doing, it has ignored fundamental principles in our jurisprudence. "[I]n the area of statutory construction, the doctrine of stare decisis has its greatest force." *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 186 (Tex.1968). I agree that we should not apply this principle rigidly, but there are no compelling reasons to overrule the long line of Texas cases interpreting section 16.009. The longstanding interpretation of the statute has wrought no hardships or injustices, and there is no indication whatsoever that the Legislature disagrees with our prior interpretation of the statute or the interpretation in numerous decisions of the courts of appeals. The courts of appeals construed the predecessor of section 16.009, art. 5536a § 2, beginning with *Ellerbe* in 1981. The Legislature re-enacted this statute with very little change as part of the Civil Practice and Remedies Code in 1985. *See* Acts 1969, 69th Leg., R.S., ch. 959, § 1, 1969 Tex.Gen.Laws 3242, 3253–54. As this Court has held:

> The rule is well settled that when a statute is re-enacted without material change, it is presumed that the legislature knew and adopted the interpretation placed on the original act and intended the new enactment to receive the same construction.

*Coastal Indus. Water Auth. v. Trinity Portland Cement Div.*, 563 S.W.2d 916, 918 (Tex. 1978). *See also Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex.1984).

We must apply the statute as written. The ordinary meaning of "construct" includes the construction of a tomato chopper. Section 16.009 does not require the constructor to also be an installer. The Legislature could have, but did not, expressly limit this statute of repose to contractors and installers. Chisholm–Ryder constructed a tomato chopper. If the tomato chopper is an improvement, the statute of repose applies.

V.

I agree with the Court that the fact the tomato chopper was removed from the Sugar

Land cannery and reinstalled at the Ramsey III Unit is not dispositive of whether the chopper was an improvement. However, I disagree with the Court that the subsequent annexation of the chopper at the Ramsey III Unit creates a new ten year period of repose. The protection intended from the statute of repose would be defeated if the time within which suit must be brought began to run anew upon relocation of the improvement. *See Conkle,* 749 S.W.2d at 491 (fact question existed as to whether bins and hoppers were an improvement even though there was some evidence they were portable); *Karisch,* 837 S.W.2d at 681 (heat exchanger an improvement as a matter of law notwithstanding evidence that heat exchangers were sometimes moved within the refinery or removed and sold); *Johnson v. Machine Ice Co.,* 820 S.W.2d 850, 852 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (fact question as to whether ice plant was an improvement although there was evidence it was removable and could be relocated); *Ablin,* 802 S.W.2d at 790 (garage door opener improvement as a matter of law even though easily removable). The intent of the parties and the nature of the item's use were to be considered in determining if the item was an improvement.

## VI.

Applying the traditional factors our courts have considered in cases of this nature to the tomato chopper, there is *at least* a fact question as to whether it is an improvement. (*See, e.g., Conkle,* 749 S.W.2d at 491, where we found a fact issue existed as to whether the bins and hoppers were an improvement to real property.) Both the TDC and Chisholm–Ryder could reasonably have expected that the tomato chopper would be annexed to real property and become an improvement.

The tomato chopper was ordered by the TDC, and then manufactured for the TDC. There could be little doubt that it was to be used and installed in a processing plant. It weighed approximately 1200 pounds and had the capacity to chop ten to twelve tons of tomatoes per hour. It was not a household product. The TDC and Chisholm–Ryder unquestionably knew that it would have to be firmly attached in some manner to a building, and that wiring, conduit, and tubing would connect it to the plant. These are facts from which a jury could reasonably find and did find that the tomato chopper was an improvement.[3]

Instead of focusing on the objective intent of the parties, and factors such as how the alleged improvement is annexed to the property and its adaptation to the use of the real property, the Court focuses on *who performed the installation.* This is a departure from our prior jurisprudence, and the Court cites no authority for this novel approach. Under this new test for what constitutes an improvement, an elevator in a high rise building *is* and at the same time *is not* an improvement, depending on one's vantage point. The elevator is an improvement if you are the defendant who actually installed it, but it is not if you are the defendant who manufactured it. Surely, the Legislature never intended the word "improvement" to have such a meaning.

\* \* \* \* \* \*

The response to the question certified by the United States Court of Appeals for the Fifth Circuit should be that, based on the record before us, the manufacturer of the chopping machine constructed an improvement to real property within the meaning of

3. The only issue submitted to the jury, to which it answered "yes", was as follows:

> Do you find from a preponderance of the evidence that the tomato chopper was an "improvement" to real property at the Central Sugarland Unit?
>
> "Improvement" means all additions and betterments to the premises and includes everything that permanently enhances the value of the premises, and may even be something easily removable so long as it is attached and intended to remain permanently as part of the building. Likewise, merely attaching some-

thing as part of the building does not make it an improvement unless it is intended to remain permanently part of the building.

> You are instructed that to determine whether the tomato chopper was an improvement, you should consider the mode and sufficiency to which it was affixed to the premises, the adaption of it to the use or purpose of the premises, and the intention of the party who placed it in the premises. The intention of the party who does the annexing is preeminent; the other two factors are merely evidence of intent.

section 16.009 of the Texas Civil Practice & Remedies Code if the tomato chopper is an improvement. Whether it was an improvement was a fact question answered by the jury.